# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

JOAN MULLIN, Administratrix of the
ESTATE OF ROBERT MULLIN,
Deceased, and JOAN MULLIN,
Individually,
              Plaintiffs,

v.

STATE OF NEW JERSEY, et al.

              Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

Hon. Mary L. Cooper, USDJ

Civil Action No.: 11-0247(MLC-LHG)

---

## BRIEF IN SUPPORT OF CROSS MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE LATE NOTICE OF CLAIM
### Return date: April 16, 2012

---

**FARKAS & DONOHUE, LLC**
25A Hanover Road -- Suite 320
Florham Park, New Jersey  07932
(973) 443-9400
(973) 443-4330 Fax
Attorneys for Defendant Jane Byrd
Our File No.: UMDNJ-113

Of Counsel:
    David C. Donohue, Esq.

On the Brief:
    Nancy Crosta Landale, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................... 2

STATEMENT OF FACTS.......................................................................... 4

   (i) Relevan Procedural History............................................................ 4

   (ii) Factual Allegations........................................................................ 5

LEGAL ARGUMENT................................................................................ 8

POINT I
SINCE DEFENDANT JANE BYRD, LPN IS IMMUNE FROM
LIABILITY UNDER *N.J.S.A.* 59:6-6, PLAINTIFS' COMPLAINT
AGAINST HER MUST BE DISMISSED.................................................. 12

POINT II
NURSE BYRD IS ENTITLED TO
SUMMARY JUDGMENT AS A MATTER OF LAW............................. 12

POINT III
ALTERNATIVELY, PLAINTIFF'S COMPLAINT MUST BE DISMISSED
FOR FAILURE TO COMPLY WITH THE
NOTICE REQUIREMENTS OF THE TORT CLAIMS
ACT............................................................................................................ 15

CONCLUSION........................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242 (1986) ........................... 12

*Beauchamp v. Amedio*, 164 *N.J.* 111 (2000) ........................................... 16, 18

*Blank v. City of Elizabeth*, 162 *N.J.* 150 (1999) ...................................... 16,18

*Brill v. The Guardian Life Insurance Company of America*,
142 *N.J.* 520 (1995)   ................................................................... 12

*Casinelli v. Manglapus*, 191 *N.J.* 354 (2004) ......................................... 21

*Charpentier v. Godsil*, 937 *F.2d* 859 (3rd Cir. 1991) ............................... 10

*Fuchilla v. Layman*, 109 *N.J.* 319
 *cert. den.*, 488 *U.S.* 826 (1988) ............................................................. 7, 15

*Galliano v. Borough of Seaside Heights*,
2007 WL979850 (D.N.J. 2007) ............................................................... 21

*Greenway Dev. Co., Inc. v. Borough of Paramaus*,
163 *N.J.* 546 (2000) ............................................................................... 10

*Henderson v. Herman*, 373 *N.J. Super.* 625 (App. Div. 2004) .................. 20, 21

*Iaconianni v. N.J. Tpke. Auth.*, 236 *N.J. Super.* 294
*(App. Div. 1989), certif. denied, 121 N.J. 592 (1990)* ............................... 16, 17

*Judson v. Peoples Bank and Trust Co. of Westfield*,
17 *N.J.* 57 (1954) ..................................................................................... 12, 13

*Kolitch v. Lindedahl*, 100 *N.J.* 485 (1985) ................................................. 10

*Kyriakos v. Dept. of Human Services*, 216 *N.J. Super.*
308 (App.Div.), *certif. denied*, 108 *N.J.* 182 (1987) ................................... 10

*Lowe v. Zarghami*, 158 *N.J.* 606 (1999) ..................................................... 20

*Ludlow v. City of Clifton*, 305 *N.J. Super.* 308, (App. Div. 1997).............. 9
*Lutz v. Twp. of Gloucester*, 153 *N.J. Super.*
 461 (App. Div. 1977) ............................................................................... 22

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
475 *U.S.* 574 (1986) ................................................................ 12

*McNesby v. State of New Jersey, Dept. of Human Services*,
231 *N.J. Super.* 568 (App. Div.), *certif. denied*,
117 *N.J.* 127 (1989) ................................................................. 9

*Moon v. Warren Haven Nursing Home*,
182 *N.J.* 507 (2005) ................................................................ 17

*O'Neill v. City of Newark*, 304 *N.J. Super.*
543 (App. Div. 1997) ............................................................... 16

*Perona v. Township of Mullica*, 270
*N.J. Super.* 19 (App. Div. 1994) .............................................. 9

*Predoti v. Bergen Pines County Hospital*, 190
*N.J. Super.* 344 (App. Div. 1983) .................................... 8, 9,10

*Priore v. State*, 190 *N.J. Super.*
127 (App. Div. 1983) ............................................................... 17

*Rochinsky v. State of N.J. Dept. of Transp.*,
110 *N.J.* 399 (1988) ................................................................ 10

*Velez v. City of Jersey City*, 180 N.J. 284 (App. Div. 2004) ...................... 15, 16

*Ventola v. N.J. Veteran's Memorial Home*,
164 *N.J.* 74 (2000) .................................................................. 19

*Wood v. County of Burlington*, 302 *N.J. Super.*
371 (App. Div. 1997) ..........................................................   17

## Secondary Authorities

Margolis and Novack, *Claims Against Public Entities* (Gann, 2008) .......... 8, 15

## STATEMENT OF FACTS

### (i)      Relevant Procedural History

On or about January 10, 2010, almost a year after the death of the decedent which forms the basis of plaintiffs' Complaint, with leave of court plaintiffs served Notices of Claims against "every public entity of which she was aware who had any known involvement with plaintiff's decedent at or near the time of death including the State of New Jersey."  *See* Plaintiffs' Certification in Support of Motion to File Late Notice of Claim and Exhibits "C" and "F" thereto. Since serving that Notice of Claim and even after filing their Complaint on January 14, 2011 specifically naming Nurse Byrd, plaintiffs have never amended their Notice of Claim and have never, until now (more than three years after plaintiffs' claim accrued), moved for leave to file late Notice of Claim against Nurse Byrd.   *See* Plaintiffs' Certification in Support of Motion to File Late Notice of Claim and Exhibits "C" and "F" thereto.

On January 14, 2011, plaintiffs Joan Mullin, Administratrix of the estate of Robert Mullin, and Joan Mullin individually filed a Complaint against the State of New Jersey, the New Jersey Department of Corrections ("DOC"), Central Reception and Assignment Facility ("C.R.A.F."), South Woods State Prison, Administrator Karen Balicki, Nurse Jane Byrd and others regarding the suicide of former inmate Robert Mullin.  *See* true copy of plaintiffs' Complaint annexed to the Certification of Counsel in Support of Cross motion and in Opposition to Plaintiffs' Motion for Leave to File Late Notice of Claim (herein "Landale Certification"), paragraph 3.  On February 2, 2011, Defendant Jane Byrd, LPN was served with the Summons and Complaint.  *See* Landale Certification, paragraph 4.

On December 1, 2011, plaintiffs filed a Second Amended Complaint, this time excluding as defendants the State of New Jersey, the DOC, CRAF and South Woods State Prison but maintaining her claims against Nurse Byrd and other public employees.  On December 13, 2011,

defendant Jane Byrd, LPN filed her Answer to plaintiffs' Second Amended Complaint.   *See*
Landale Certification at paragraphs 4 and 5.

On or about February 9, 2012, plaintiffs requested Guaranteed Subpoena to serve on the
State of New Jersey, C.R.A.F., South Woods State Prison, and Trenton Psychiatric Hospital
subpoenas *duces tecum* for "records, files, correspondence, reports, charts, notes, log entries,
computer entries, [and] emails" relating to the decedent. *See* Landale Certification at paragraph 18.
Upon information and belief, despite having medical records from the public entity defendants
since before the filing of their original complaint in January 2011, these were the first subpoenas
issued to the aforementioned entities for such additional records concerning the decedent and those
involved in his care. *Id.*

<h3 align="center">(ii)      Factual Allegations</h3>

Robert Mullin, Jr., plaintiff Joan Mullin's son, was incarcerated in the New Jersey
Department of Corrections in January 2009.  At some point between January 15, 2009 and January
17, 2009, Mullin came under the care of Trenton Psychiatric Hospital and then was returned to the
custody of the New Jersey Department of Corrections.  On January 17, 2009, Mullin hung himself
in his cell. *Id.* at paragraphs 6 and 7.

In their original January 2011 Complaint plaintiffs alleged that defendants State of New
Jersey, DOC, South Woods State Prison, and C.R.A.F. were public entities and/or agencies or
divisions of a public entity organized and existing under the laws of the State of New Jersey.
*Id.* at paragraph 8.  In their original Complaint as well as their Second Amended Complaint,
plaintiffs alleged that at all relevant times, defendant Jane Byrd, LPN was a "health care
provider and employee, agent or servant of defendants State of New Jersey, DOC, South Woods
State Prison, and/or C.R.A.F, engaged in the rendering of health care services including inmate
evaluations." *Id.* at paragraph 9.

In their original Complaint, plaintiffs allege in paragraph 23 that "[d]uring all relevant times between January 15, 2009 and the time and date of death on January 17, 2009 plaintiff was under the custodial care of the PUBLIC ENTITY DEFENDANTS [defined in paragraph 15 as the State of New Jersey, the DOC, South Woods State Prison, CRAF and Mercer County]. *Id.* at paragraph 10. In their original Complaint at paragraph 25 plaintiffs allege that on "January 16, 2009, defendants JANE BYRD, L.P.N. and ERIN MARUSKY, R.N., acting under color of law and in their official capacities as employees, agents and servants of the PUBLIC ENTITY and SUPERVISOR DEFENDANTS [the latter defined in paragraphs 5, 7, 8 and 19 as South Woods State Prison Administrator Karen Balicki; DOC Director Robert Patterson; and CRAF Director Marie Dunlap-Pryce] . . .undertook to examine and evaluate plaintiff's decedent." (Emphasis added). Similar allegations as to Nurse Byrd's actions under color of state law and within the scope of her authority as an agent, servant and employee of the "public entity" and "supervisor" defendants are made in paragraphs 29 and 35. *Id.* at paragraph 11.

In their original Complaint at paragraph 26, plaintiffs allege that despite the decedent's known history of suicide attempts, anxiety, depression and psychiatric instability, Nurses Byrd and Marusky determined that the decedent was medically cleared to be released into the general population at CRAF and/or South Woods facility under the supervision, management, and control of the public entity defendants. *Id.* at paragraph 12. Similarly, in their Second Amended Complaint, plaintiffs allege that on January 16, 2009, an entry in the medical record identifies a "nursing intake" completed by defendant Jane Byrd, L.P.N. during which the decedent answered "yes" to the question: "Have you ever been hospitalized or treated for psychiatric illness" and to the question "have you ever considered or attempted suicide." Plaintiffs further allege that despite a known history of suicide attempts, anxiety, depression and psychiatric instability, Nurse Byrd determined on January 16, 2009 that plaintiff's decedent was medically

6

cleared to be released into the general population at the CRAF and/or South Woods State Prison facility. *Id.* at paragraph 13. Plaintiffs ultimately allege that Nurse Byrd, acting in her personal, individual and official capacities, permitted Mr. Mullin to be unsupervised and able to harm himself; failed to implement procedures respecting suicide watch and avoidance; and failed to intervene, exposing the decedent to foreseeable and imminent bodily harm. *Id.* at paragraph 14. *See also* plaintiffs' Preliminary Statement (Pb1).

As admitted in her Answer to the Second Amended Complaint and in her Certification in support of her cross motion and in opposition to plaintiffs' motion, Nurse Byrd, an employee of UMDNJ working at C.R.A.F, had only one interaction with the decedent: the intake interview January 16, 2009. *Id.* at paragraph 15. As the interview responses reveal, Mr. Mullin denied that he wanted to hurt himself or anyone else. *Id.* at paragraph 16. From October 2008 to the present, Nurse Byrd has been employed by UMDNJ, a public entity within the meaning of the Tort Claims Act. *Id.*; *see also Fuchilla v. Layman*, 109 *N.J.* 319, 330-331, *cert. den.*, 488 *U.S.* 826 (1988). Prior to being named as a defendant in this matter, Nurse Byrd was never the subject of investigation efforts on behalf of plaintiff's. *Id.*

## LEGAL ARGUMENT

## POINT I

### SINCE DEFENDANT JANE BYRD, LPN IS IMMUNE FROM LIABILITY UNDER *N.J.S.A.* 59:6-6, PLAINTIFFS' COMPLAINT AGAINST HER MUST BE DISMISSED

The New Jersey Tort Claims Act confers immunity on public employees like defendant Jane Byrd, LPN for claims and decisions made regarding confinement of a person for mental illness. Specifically, *N.J.S.A.* 59:6-6 provides:

> a. Neither a public entity nor a public employee is liable for any injury resulting from determining in accordance with any applicable enactment:
>
> (1)   whether to confine a person for mental illness or drug dependence;
> (2)   the terms and conditions of confinement for mental illness or drug dependence;
> (3)   whether to parole, grant a leave of absence to, or release a person from confinement for mental illness or drug dependence.

As the 1972 Task Force Comment states: "This section recognizes a specific immunity for the discretionary acts of determining whether to confine such persons and the terms and conditions of their confinement as well as their release. Margolis and Novack, *Claims Against Public Entities* (Gann, 2008), 1972 Task Force Comment to *N.J.S.* 59:6-6. As set forth in the Landale Certification at paragraphs 14-17, plaintiffs' theory against Nurse Byrd is that despite Mr. Mullin's known history of suicide attempts, anxiety, depression and psychiatric instability, Nurse Byrd determined on January 16, 2009 that Mr. Mullin was medically cleared to be released into the general population at the CRAF and/or South Woods State Prison facility which, in turn, led to his death by suicide.

*Predoti v. Bergen Pines County Hospital,* 190 *N.J. Super.* 344 (App. Div. 1983) confirms Nurse Byrd's immunity for such claims. In *Predoti, supra,* plaintiff was committed to the hospital for his "schizophrenia chronic undifferentiated suicidal" condition.   Like Ms.

8

Mullin here, the plaintiff in *Predoti* claimed the decision to transfer him to the "open" ward, where he was allowed to walk the grounds and suffer injury when he left the group and attempted to cross the Garden State Parkway,was negligent. *Id.* at 346.

Affirming summary judgment entered below, the *Predoti* court cited *N.J.S.A.* 59:6-6, *supra* and stated: "Even if transferring plaintiff to an open ward is a form of treatment for which defendants would not ordinarily be immune [as under *N.J.S.A.* 59:6-5(b), excepting from immunity a public entity's or employee's negligent act or omission in administering treatment prescribed for mental illness or drug dependence], **the decision to transfer is rendered immune by the specific provisions of *N.J.S.A.* 59:6-6 . . .".** *Id.* at 347; emphasis added. Underscoring its affirmance, the *Predoti* court stated:

> Decisions affecting confinement of the mentally ill are usually highly predictive and though reasonable can lead to a demonstrably bad result. They are made even more difficult because doctors must consider the important social policy of maximizing the personal liberty of those who are mentally ill. **By immunizing these difficult decisions the Legislature allows them to be made in an atmosphere free from the fear of suit.**

*Id.* at 347-348; emphasis added; footnote omitted. *See also Ludlow v. City of Clifton,* 305 *N.J. Super.* 308, 309-310; 312 (App. Div. 1997), holding that a board of education, superintendent of schools, and child study team were immune from suit under *N.J.S.A.* 59:6-6 by a school nurse who was attacked by an emotionally disturbed student and claimed the student should have been placed in a more restrictive facility; *Perona v. Township of Mullica,* 270 *N.J. Super.* 19, 27 (App. Div. 1994), holding that *N.J.S.A.* 59:6-6 immunized individual police officers for their discretion in deciding not to take a suicidal woman into custody, after which she attempted suicide and was injured; and *McNesby v. State of New Jersey, Dept. of Human Services,* 231 *N.J. Super.* 568, 572 (App. Div.), *certif. denied,* 117 *N.J.* 127 (1989), holding that *N.J.S.A.* 59:6-6 immunized the state from liability for the suicide of the decedent, a patient of Ancora

9

Psychiatric Hospital who had attempted suicide several times in the past, in the face of plaintiff's claims that the decedent should not have been transferred to the "step up" ward, where he obtained gasoline and set himself afire.[1]

The Tort Claims Act is a comprehensive scheme seeking to provide compensation to tort victims without unduly interfering with governmental functions and imposing an excessive burden on taxpayers. *Greenway Dev. Co., Inc. v. Borough of Paramaus*, 163 *N.J.* 546, 552 (2000). "Except as otherwise provided by this [A]ct, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person". *N.J.S.A.* 59:2-1(a) (footnote omitted). This means that generally, "immunity applies and 'liability is the exception.'" *Greenway, supra*, 163 *N.J.* at 552, *quoting Fleur v. City of Cape May*, 159 *N.J.* 532, 539 (1999). Even "close questions of interpretation relating to these immunity provisions must be resolved **in favor of** immunity." *Charpentier v. Godsil*, 937 *F.2d* 859, 865 (3rd Cir. 1991) (emphasis added), citing Kyriakos v. Dept. of Human Services, 216 N.J. Super. 308, 312 (App.Div.), *certif. denied,* 108 *N.J.* 182 (1987) and *Predoti, supra,* 190 *N.J. Super.* at 347. Indeed, "immunity is the dominant consideration of the Act", and even when one provision of the Tort Claims Act establishes liability, that liability is negated if there is a corresponding immunity. *Rochinsky v. State of N.J. Dept. of Transp.*, 110 *N.J.* 399, 408 (1988), *quoting Kolitch v. Lindedahl*, 100 *N.J.* 485, 497 (1985).

Here, plaintiffs claim that Nurse Byrd was negligent for allowing the decedent to be released into the general population is immunized by *N.J.S.A.* 59:6-6. As such, for the reasons

---

1   Even if Nurse Byrd's actions are considered a failure to diagnose mental illness and *N.J.S.A.* 59:6-5 is invoked, immunity is provided in all circumstances for injury resulting from the failure to prescribe under *N.J.S.A.* 59:6-5(a) (as opposed to the liability imposed for failure to properly administer *prescribed* treatment under *N.J.S.A.*59:6-5(b)). *Charpentier v. Godsil,* 937 *F.2d* 859, 866 (3rd Cir. 1991). The Legislature's view is that public entities and public employees should not be liable for failing to prescribe for mental illness due to "the difficulties involved when attempting to diagnose mental illness . . . and when attempting to decide whether or not to prescribe for such conditions." *Id., citing N.J.S.A.* 59:6-5, comment.

set forth in Points I and II herein, plaintiffs' Complaint against Nurse Byrd must be dismissed with prejudice.

**POINT II**

**NURSE BYRD IS ENTITLED TO
SUMMARY JUDGMENT AS A MATTER OF LAW**

The summary judgment procedure provides a prompt, businesslike and inexpensive means to dispose of a case where examination of the pleadings, admissions, depositions and affidavits show that there is no genuine issue of material fact requiring disposition at trial, and the moving party is entitled to judgment as a matter of law. *Judson v. Peoples Bank and Trust Co. of Westfield*, 17 *N.J.* 57, 74 (1954); R. 4:46-2.

In *Brill v. The Guardian Life Insurance Company of America*, 142 *N.J.* 520, 535-540 (1995), our Supreme Court adopted holdings of the U.S. Supreme Court in *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 *U.S.* 574 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242 (1986) and *Celotex Corp. v. Catrett*, 477 *U.S.* 317 (1986) and determined that the trial judge, when ruling on a motion for summary judgment, must conduct the same type of analysis as required in determining the propriety of a directed verdict under *R.* 4:37-2(b). The trial court is to "be guided by the evidentiary standard of proof -- by a preponderance of the evidence or clear and convincing evidence -- that would apply at the trial on the merits. . . ." *Id.* at 533-34, citing *Liberty Lobby, supra*, (citations omitted). The judge must analyze and weigh the facts to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Brill*, 142 *N.J.* at 536, citing *Liberty Lobby, supra* (citations omitted).

While the court still must grant all favorable inferences to the non-moving party, it may pick and choose inferences from the evidence to the extent that "a miscarriage of justice under the law" is not created. *Id.* Under this standard, whether there exists a "genuine issue" material fact precluding summary judgment requires the motion to judge to consider whether the

competent evidential material presented, viewed in the light most favorable to the non-moving party, is sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party. *Id.* at 540.

Quoting an Arizona Supreme Court decision, the *Brill* court noted that the standard articulated in *Celotex* and *Liberty Lobby, supra*, has been adopted by the majority of courts in other jurisdictions:

> We live in what is widely perceived as a time of great increase of litigation and one in which many meritless cases are filed, vastly increasing the dockets before our trial judges. As a result, the courts of this country have been urged to liberalize the standards so as to permit summary judgment in a larger number of cases [*Brill, supra,* 142 *N.J.* at 538-539, quoting *Orme School v. Reeves,* 802 *P.*2d 1000, 1003-04].

Accordingly, *Brill* serves to encourage trial courts to grant summary judgment when proper circumstances are presented. 142 *N.J.* at 541. While *Brill* recognized the importance of not precluding trial for a deserving litigant, it stressed it is just as important that the court not "allow harassment of an equally deserving suitor for immediate relief by a long and worthless trial." *Id.* at 540-41 (quoting *Judson, supra*, 17 *N.J.* at 77). To send a case to trial, knowing that a rational jury can reach but one conclusion, would be "worthless" and "will serve no useful purpose." *Id.* at 541.

Thus, analyzing and evaluating all the facts presented in the instant matter, it is respectfully submitted that there is no genuine issue of material fact which should preclude granting summary judgment in favor of Nurse Byrd based on her tort claim immunity from suit. Given her immunity under *N.J.S.A.* 59:6-6, a rational jury could conclude only that Nurse Byrd is not a viable defendant. To allow plaintiffs to proceed to trial on their baseless claim against an immunized public employee such as Nurse Byrd indeed would be "worthless" and "serve no useful purpose." Under any scenario presented, plaintiffs' claim is barred due to Nurse Byrd's

13

immunity.  Accordingly, summary judgment dismissal should be granted in favor of Nurse Byrd as a matter of law.

## POINT III

## ALTERNATIVELY, PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE NOTICE REQUIREMENTS OF THE TORT CLAIMS ACT

### (i) Statutory and Case Law

Pursuant to *N.J.S.A.* 59:8-3, "[n]o action shall be bought against a public entity or public employee under this act **unless** the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." (Emphasis added).   UMDNJ is a public entity for purposes of the Tort Claims Act.  *Fuchilla v. Layman,* 109 *N.J.* 319, 330-331, *cert. den.,* 488 *U.S.* 826 (1988).  Nurse Byrd is a public employee and employed by UMDNJ. *See* Exhibit 5 to the Landale Certification.

*N.J.S.A.* 59:8-3 was amended in 1994 specifically to make the filing of Notice of Claim provisions a prerequisite to **maintaining suit** against the public employee.   Before this amendment, notice was required only of the public entity itself.  Margolis and Novack, *Claims Against Public Entities* (Gann, 2008), comment to *N.J.S.* 59:8-3.

*N.J.S.A.* 59:8-4 sets forth the mandatory contents of a Notice of Claim:

> A claim shall be presented by the claimant or by a person acting on his behalf **and shall include**:
>
> * * *
>
> e.      **The name or names of the public entity, employee or employees causing the injury, damage or loss, if known**; . . .

[Emphasis added].  *N.J.S.A.* 59:8-4(e) mandates, therefore, that the names of both the public entity **and employee** be set forth in the Notice of Claim.  If the public employee is not named, suit cannot proceed against her since the prerequisite to suit is missing.  *N.J.S.A.* 59:8-3. Plaintiffs' citation of *Velez v. City of Jersey City*, 180 N.J. 284, 296 (App. Div. 2004) in support of their argument that Nurse Byrd need not be named in the Notice of Claim (Pb8) is incorrect.

Rather, *Velez, supra,* held that as a matter of filing procedure, and as is still the case under *N.J.S.A.* 59:8-8, a claim against a public entity or public employee shall be forever barred *if the claimaint has failed to **file his claim with the public entity*** within 90 days of accrual of his claim.

A Notice of Tort Claim must be presented no later than ninety days after accrual of the action. *N.J.S.A.* 59:8-8. An action accrues when a wrongful act or omission occurs and results in an injury for which the law provides a remedy. *Beauchamp v. Amedio,* 164 *N.J.* 111, 116-117 (2000); *N.J.S.A.* 59:8-1. A person need not have or even contemplate filing a claim in order to trigger the notice provision. *Id.* at 121.

In narrowly-defined situations and in the court's discretion, a Notice of Claim may be filed late, but no later than within one year of accrual. *N.J.S.A.* 59:8-9. When plaintiffs make their motion for leave to file a late notice of claim, they must put forth "affidavits based on personal knowledge of the affiant showing sufficient reasons constituting **extraordinary circumstances**" for failing to file within the 90-day period or a reasonable time thereafter. *Id.;* emphasis added. Indeed, the "extraordinary circumstances" language was added in 1994 to signal "the end to a rule of liberality in filing." *Beauchamp, supra,* 164 *N.J.* at 118. As the Beauchamp court observed, it is a "common and regrettable occurrence for accrual and extraordinary circumstances to be treated as interchangeable and for courts and litigants to overlook the primary question of accrual and directly confront the ultimate question of extraordinary circumstances." *Id.* at 120.

Plaintiffs also are obligated to exercise reasonable diligence in investigating the  claim. *Blank v. City of Elizabeth,* 162 *N.J.* 150, 152-153 (1999); *Iaconianni v. N.J. Tpke. Auth.,* 236 *N.J. Super.* 294, 297 (App. Div. 1989), *certif. denied,* 121 *N.J.* 592 (1990). Ignorance of notice requirements will not constitute a sufficient, extraordinary circumstance for the delay. *O'Neill*

*v. City of Newark*, 304 *N.J. Super.* 543, 552 (App. Div. 1997). *See also Wood v. County of Burlington*, 302 *N.J. Super.* 371, 379 (App. Div. 1997), holding that plaintiff's ignorance of the law does not constitute "extraordinary circumstances."

A Notice of Claim filed after the 90-day period without leave of court is a nullity, failing to confer jurisdiction upon the court to grant leave to file a late notice of claim beyond the one year period. *Priore v. State*, 190 *N.J. Super.* 127, 130 (App. Div. 1983), *overruled on other grounds, Moon v. Warren Haven Nursing Home*, 182 *N.J.* 507 (2005). Without a timely Notice of Claim filed within one year as provided in *N.J.S.A.* 59:8-9, the court lacks jurisdiction to allow the claimant to proceed. *Iaconianni, supra*, 236 *N.J. Super.* 294 at 298.

### (ii) Law applied to Nurse Byrd, a public employee defendant

In the case at bar, neither Nurse Byrd nor her employer, UMDNJ, have ever been identified in any Notice of Claim. Though more than <u>three years</u> have elapsed since accrual of plaintiffs' claim, until plaintiffs filed their original Complaint in January 2011 there never was any indication that an action would be brought against Nurse Byrd specifically among the many public employee medical providers who interacted with the decedent. Without a timely and sufficient Notice of Claim naming Nurse Byrd filed within, at the outset, a year of accrual of plaintiffs' claim, this Court respectfully lacks jurisdiction to allow plaintiffs' Complaint to proceed against Nurse Byrd.

Given the information readily available to plaintiffs and clearly in their possession prior to January 2011, there was no justification for their failure to identify Nurse Byrd in a timely filed Notice of Claim, and there exist no exceptional circumstances excusing their failure. Though plaintiffs cite in their Second Amended Complaint Ms. Mullin's unsuccessful attempts to request records, <u>no</u> explanation is provided as to why information concerning Nurse Byrd, a public employee clearly known to plaintiffs since before the filing of plaintiffs' Complaint in

January 2011, was never discovered or attempted to be discovered before, or even after plaintiffs served their initial Notice of Claim on or about January 29, 2010 or their original complaint in January 2011. Though Ms. Mullin swears in her Affidavit that no person, official or attorney made her aware that a Notice of Claim was required to be filed within ninety days of "the date of the incident", it remained her obligation to investigate. Clearly she knew by January 29, 2010 that a Notice of Claim had to be filed since one was filed by her counsel – and clearly she had met with her counsel well before January 2010 to exchange information so as to make her motion for leave to file late notice of claim.

As stated *supra*, a person's knowledge of a claim has no effect on the triggering of the notice provision. *Beauchamp*, *supra*, 164 *N.J.* at 121. As the court in *Blank*, *supra*, observed in denying the existence of exceptional circumstances where plaintiff claimed he was unable to identify the public ownership of a pipe over which he fell, plaintiff must provide some evidence for the court "to discern the nature or complexity of the investigation required to ascertain" public entity involvement; plaintiff must provide some indication as to whether the question of public entity involvement "was reasonably discernable during the ninety-day period"; and plaintiff must counter the challenge that inspection within a reasonable time following the accident would have led promptly to identification of the public entity defendants. 162 *N.J.* at 152-153. Here, like in *Blank*, *supra*, plaintiffs have provided nothing to show the difficulty or hampering of reasonably timed investigative efforts, and have provided nothing to counter the charge that timely inspection would have led to knowledge of Nurse Byrd's public employee status.

Indeed, plaintiffs admit they knew Nurse Byrd worked for C.R.A.F. They provide no good faith reason for failing to name her in the Notice of Claim filed in January 2010; for being unable to determine that C.R.A.F. utilized UMDNJ employees such as Nurse Byrd during the

time in question; and for failing to perform the necessary investigation to determine Nurse Byrd's status.    They provide no good faith explanation for waiting over three years before applying to this Court for relief from the ninety day Notice of Claim requirement.  Most telling is their delay until now, after Nurse Byrd has stated her employment status in her pleadings, to apply for relief; and their failure until February 2012 to issue subpoenas for information from the public entities involved.

Certainly with this lack of diligence, plaintiffs cannot maintain that Nurse Byrd's status as a public employee was obscured or indiscernible, and that exceptional circumstances exist to allow plaintiffs' Complaint to proceed against Nurse Byrd.  As plaintiffs allege in their original complaint, Nurse Byrd was a public employee acting under color of state law.  Plaintiffs knew and plead in their complaint as well as their original Notice of Claim in January 2010 that Mr. Mullin was in the state's custody and at its institutions during the time in question.  Plaintiffs have demonstrated no diligence in pursuing their rights as to obtain the information necessary and statutorily mandated for inclusion in the Notice of Claim and make no representations about any actions they took to ensure that, as the Tort Claims Act requires, Nurse Byrd was individually named in their Notice of Claim.

Unlike in *Ventola v. N.J. Veteran's Memorial Home*, 164 *N.J.* 74 (2000), this is not a case of confusion between federal and state entities, or where Nurse Byrd's status was indiscernable.  Rather, in this case, plaintiffs simply failed to investigate; failed to timely serve a Notice of Claim naming Nurse Byrd; and then failed to make a timely motion for leave to file late notice of claim, all to Nurse Byrd's detriment and in abrogation of legislatively mandated requirements.  In *Ventola,* moreover, plaintiff in fact filed a timely Tort Claim Notice and was otherwise diligent in pursuing his claims. *Id.* at 82.

Unlike *Lowe v. Zarghami*, 158 *N.J.* 606 (1999), this is not a case where plaintiffs were justifiably unaware that Mr. Mullin was treated by a public employee at a <u>private</u> hospital. As plaintiffs admit time and again in their pleadings and papers, Mr. Mullin was in the state's custody and handled by public entity defendants during the time in question.

Indeed, Nurse Byrd's public employee status was clear. This was not an "innocent mistake." Contrary to legislative mandate, Nurse Byrd and her employer, UMDNJ, were put on notice of plaintiffs' claim of negligence only when Nurse Byrd was served with plaintiff's Complaint in or about February 2011, more than two years after accrual of plaintiffs' cause of action.

Our Appellate Division, as well as the United States District Court, supports the conclusion that plaintiffs' failure to serve a Notice of Claim naming Nurse Byrd is fatal to their cause of action. In *Henderson v. Herman, supra,* the Appellate Division considered a case where a minor, aged two and a half, suffered irreversible brain damage and cardiac and respiratory arrest due to alleged failure of police dispatch and emergency and transport personnel to respond to a 9-1-1 call. Plaintiffs alleged that the failure to respond appropriately was the proximate cause of the infant's death. Notice provided by the plaintiff was as to, in pertinent part: "Old Bridge First Aid and Rescue Squad, its agents, servants and/or employees, including but not limited to dispatch and emergency medical and transport personnel." *Id.* at 630. In the trial court, the defendants moved for partial summary judgment, arguing that plaintiff's failure to include the dispatcher defendants' names in the notice were fatal. *Id.* at 631. In considering the propriety of the trial court's dismissal of the individual dispatchers, the *Henderson* court specifically found that the complaints should not have been dismissed for the plaintiff's failure to include the names of the dispatchers as opposed to their descriptive job designations <u>because the identity of the employee or employer was nearly as clear from the</u>

designation or description provided as it would have been by the inclusion of his or her name."
*Id.* at 633, citing *Casinelli v. Manglapus*, 191 *N.J.* 354, 355 –356 (2004).  As the *Henderson* court ruled, the description provided by the plaintiff in the notice, "together with the disclosed time and place of the occurrence, leave no room for mistake or confusion as to the identity of the involved employees.…[T]here was never any doubt that dispatcher Smith and Nelson were the employees referred to in the notice form…" *Id.* at 635; emphasis added.

Here, in the original Notice of Claim (Exhibit C to Plaintiffs' supporting Certification), and unlike in *Henderson, supra*, plaintiffs failed to name or even describe the public employees allegedly at fault and  failed to amend or make any other attempt to timely update such information.  Even when plaintiffs filed their original Complaint naming Nurse Byrd and others, they made no effort to rectify their Notice of Claim and provide the required notice of their claims against public employees who they clearly and for some time knew were involved in Mr. Mullin's care.[2]

Public employee Nurse Byrd and, in turn, UMDNJ have been deprived of the legislatively mandated opportunities afforded to allow at least six months for administrative review, with the opportunity to settle meritorious claims prior to the bringing of suit; to have prompt notification of the claim in order to adequately investigate the facts and prepare a defense; to be afforded the chance to correct the conditions or practices which gave rise to the claim; and to be informed in advance as to the indebtedness or liability that may be expected.

---

2 Further support of this result can be found in the unpublished opinion *Galliano v. Borough of Seaside Heights*, 2007 WL979850 (D.N.J. 2007).  *See* Exhibit 6 to the Landale Certification.  In *Galliano*, plaintiff alleged certain conduct against individual Seaside Heights and Dover Township Officers as well as Police Chiefs Mastronardi and Costello regarding these public employees' respective obligations as to investigation, reporting, evaluative, and supervisory duties.  Barring these claims against Chief Costello in his individual capacity because the plaintiff's initial counsel failed to file a timely Notice of Tort Claim as to Costello, the *Galliano* court distinguished *Henderson v. Herman, supra*, since in the *Galliano* case, unlike in *Henderson*, the plaintiff had not substantially complied with the Notice of Claim provision.  Specifically, while in *Henderson, supra*, plaintiffs had identified the defendant dispatchers in the notice, in the *Galliano* case Chief Costello was simply identified as a witness, with no indication that the action was being brought against him.  *Galliano, supra*, 2007 WL979850 at 28.

21

*Velez, supra,* 180 *N.J.* at 290, quoting *Beauchamp*, *supra,* 164 *N.J.* at 121-122 (internal quotations and citations admitted).   The very purpose of the 90-day limit is to "compel a claimant to expose his intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh." *O'Neill, supra,* 304 *N.J. Super.* at 549, *citing Lutz v. Twp. of Gloucester*, 153 *N.J. Super.* 461, 466 (App. Div. 1977).   With no justifiable reason for failing to file a Notice of Claim naming Nurse Byrd, plaintiffs' Complaint should be dismissed with prejudice.

## CONCLUSION

For the reasons expressed herein, plaintiffs' Complaint should be dismissed with prejudice against Jane Byrd, LPN due to Nurse Byrd's immunity pursuant to the Tort Claims Act. Alternately, plaintiffs' Complaint should be dismissed for plaintiffs' failure to comply with the notice provisions of the Tort Claims Act.

**FARKAS & DONOHUE, LLC**
Attorneys for defendant
Jane Byrd, LPN

By: _____
       Nancy Crosta Landale

Dated: 4/2/12