**FARKAS & DONOHUE, LLC**
25A Hanover Road – Suite 320
Florham Park, New Jersey 07932
(973) 443-9400
(973) 443-4330 Fax
Attorneys for Defendant Jane Byrd, LPN
Our File No.: UMDNJ-113
By: Nancy Crosta Landale, Esq.
nlandale@FarkasandDonohue.com

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOAN MULLIN, Administratrix of the ESTATE OF ROBERT MULLIN, Deceased, and JOAN MULLIN, Individually, | : : : : | Hon. Mary L. Cooper, USDJ |
| Plaintiffs, | : | Civil Action No.: 11-0247(MLC-LHG) |
| v. | : : | **CERTIFICATION OF COUNSEL** |
| | : | **IN SUPPORT OF CROSS MOTION** |
| STATE OF NEW JERSEY, et al. | : | **TO DISMISS AND IN OPPOSITION** |
| | : | **TO PLAINTIFFS' MOTION FOR** |
| Defendants. | : | **LEAVE TO FILE LATE NOTICE** |
| | : | **OF CLAIM** |

Nancy Crosta Landale, Esq., of full age, in lieu of oath or affidavit, hereby certifies and says:

1.     I am a partner with Farkas & Donohue, LLC, attorneys for defendant Jane Byrd, LPN, and fully familiar with the facts set forth herein.  I make this Certification in support of defendant Jane Byrd, LPN's cross motion to dismiss and in opposition to plaintiffs' motion for leave to file late Notice of Claim.

2.     On or about January 10, 2010, almost a year after the death of the decedent which forms the basis of plaintiffs' Complaint (*see* paragraph 3, *infra*), with leave of court plaintiffs served Notices of Claims against "every public entity of which she was aware who had any known involvement with plaintiff's decedent at or near the time of death including the State of New Jersey." *See* Plaintiffs' Certification in Support of Motion to File Late Notice of Claim and Exhibits "C" and "F" thereto.  Since serving that Notice of Claim and even after

1

filing their Complaint on January 14, 2011 (see paragraph 3, infra) specifically naming Nurse Byrd, plaintiffs have never amended their Notice of Claim and have never, until now (more than three years after plaintiffs' claim accrued), moved for leave to file late Notice of Claim against Nurse Byrd.

3.     On January 14, 2011 plaintiffs Joan Mullin, Administratrix of the Estate of Robert Mullin, and Joan Mullin individually filed a Complaint against the State of New Jersey, the New Jersey Department of Corrections ("DOC"), Central Reception and Assignment Facility ("C.RA.F."), South Woods State Prison, Administrator Karen Balicki, Nurse Jane Byrd, and others regarding the suicide of former inmate Robert Mullin. *See* true copy of plaintiffs' Complaint annexed hereto as Exhibit 1.

4.     On December 1, 2011, plaintiffs filed a Second Amended Complaint.  In the Second Amended Complaint plaintiffs did not name as defendants the State of New Jersey, the DOC, C.R.A.F, and South Woods State Prison but maintained her claims against Nurse Byrd and other public employees. *See* true copy of plaintiffs' Second Amended Complaint, annexed hereto as Exhibit 2.

5.     On December 13, 2011, defendant Jane Byrd, LPN filed her Answer to plaintiffs' Second Amended Complaint. *See* true copy annexed hereto as Exhibit 3.

6.     Robert Mullin, Jr., plaintiff Joan Mullin's son, was incarcerated in the New Jersey Department of Corrections in January 2009. *See* Exhibit 2, paragraph 11.

7.     At some point between January 15, 2009 and January 17, 2009, Mr. Mullin came under the care of Trenton Psychiatric Hospital and then was returned to the custody of the New Jersey DOC. *Id.* at paragraphs 14-16.  On January 17, 2009, Mr. Mullin hung himself in his cell. *Id.* at paragraph 18.

8.    In their original Complaint plaintiffs alleged that defendants State of New Jersey, DOC, South Woods State Prison, and CRAF were public entities and/or agencies or divisions of a public entity organized and existing under the laws of the State of New Jersey. *See* Exhibit 1 at paragraphs 2, 3, 4 and 6.

9.    In their original Complaint as well as their Second Amended Complaint, Plaintiffs allege that "At all relevant times herein, defendant Jane Byrd, LPN, was, upon information and belief a health care provider and employee, agent or servant of defendants State of New Jersey, DOC, South Woods State Prison, and/or CRAF, engaged in the rendering of health care services including inmate evaluations." *See* Exhibit 1, paragraph 9 and Exhibit 2, paragraph 6.

10.    In their original Complaint, plaintiffs allege in paragraph 23: "During all relevant times between January 15, 2009 and the time and date of death on January 17, 2009 plaintiff was under the custodial care of the PUBLIC ENTITY DEFENDANTS" [defined in paragraph 15 as the State of New Jersey, the DOC, South Woods State Prison, C.R.A.F. and Mercer County]. *See* Exhibit 1.

11.    In their original Complaint at paragraph 25 plaintiffs allege that on "January 16, 2009, defendants JANE BYRD, L.P.N. and ERIN MARUSKY, R.N., acting under color of law and in their official capacities as employees, agents and servants of the PUBLIC ENTITY and SUPERVISOR DEFENDANTS [the latter defined in paragraphs 5, 7, 8 and 19 as South Woods State Prison Administrator Karen Balicki; DOC Director Robert Patterson; and CRAF Director Marie Dunlap-Pryce] . . .undertook to examine and evaluate plaintiff's decedent." Similar allegations as to Nurse Byrd's actions under color of state law and within the scope of her

authority as an agent, servant and employee of the "public entity" and "supervisor" defendants are made in paragraphs 29; 35. *Id.*

12.     In their original Complaint at paragraph 26, plaintiffs allege that despite the decedent's known history of suicide attempts, anxiety, depression, and psychiatric instability, Nurses Byrd and Marusky determined that the decedent was medically cleared to be released into the general population at C.R.A.F and/or South Woods facility under the supervision, management, and control of the public entity defendants. *Id.*

13.     Similarly, in their Second Amended Complaint, plaintiffs allege that on January 16, 2009, an entry in the medical record identifies a "nursing intake" completed by defendant Jayne Byrd, LPN during which the decedent answered "yes" to the question: "Have you ever been hospitalized or treated for psychiatric illness" and "Have you ever considered or attempted suicide." Plaintiffs further allege that despite a known history of suicide attempts, anxiety, depression, and psychiatric instability, Nurse Byrd determined on January 16, 2009 that plaintiff's decedent was medically cleared to be released into the general population at the CRAF and/or South Woods State Prison facility. *See* Exhibit 2 at paragraphs 36 and 40.

14.     In their Second Amended Complaint plaintiffs ultimately allege that Nurse Byrd, acting in her personal, individual and official capacities, permitted Mr. Mullin to be unsupervised and able to harm himself; failed to implement procedures respecting suicide watch and avoidance; and failed to intervene, exposing the decedent to foreseeable and imminent bodily harm. *Id.* at paragraph 54.

15.     As admitted in her Answer to the Second Amended Complaint, Nurse Byrd had only one interaction with the decedent, consisting of the intake interview on January 16, 2009. *See* Exhibit 3, paragraphs 122-123.

16.     From October 2008 to the present, Nurse Byrd has been employed by UMDNJ, a public entity within the meaning of the Tort Claims Act.  *See* Certification of Jane Byrd, LPN, annexed hereto as Exhibit 5; *see also Fuchilla v. Layman*, 109 *N.J.* 319, 330-331, *cert. den.*, 488 *U.S.* 826 (1988).

17.     To the present day, plaintiffs have never served a subpoena or any other discovery device on Nurse Bryd or UMDNJ to determine Nurse Byrd's status as a public employee.  See Exhibit 4.

18.     On or about February 9, 2012, plaintiffs requested Guaranteed Subpoena to serve on the State of New Jersey, CRAF, South Woods State Prison, Trenton Psychiatric Hospital subpoenas *duces tecum* for records relating to the decedent. Upon information and belief, these were the first subpoenas issued by plaintiffs to the aforementioned entities for records concerning the decedent.

19.     On or about February 9, 2012, plaintiffs requested Guaranteed Subpoena to serve on the State of New Jersey, C.R.A.F. South Wood State Prison, Trenton Psychiatric Hospital subpoenas *duces tecum* for "records, files correspondence, reports, charts, notes, log entries, computer entries, [and] emails" relating to the decedent.  Upon information and belief, despite having medical records from the public entity defendants since before the filing of plaintiffs' original complaint in January 2011, these were the first subpoenas issued to the aforementioned entities for such additional records concerning the decedent and those involved in his care.  *See* true copies of aforementioned subpoenas, annexed hereto as Exhibit 4.

20.     Attached hereto as Exhibit 6 is a true copy of the unpublished opinion in *Galliano v. Borough of Seaside Heights*, 2007 WL979850 (D.N.J. 2007).

21.    I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment. I also certify that the facsimile signature of Jane Byrd, LPN on her Certification, attached hereto as Exhibit 4, was acknowledged as genuine by Nurse Byrd and that her Certification or a copy thereof with an original signature affixed will be filed if requested by the Court or any party.

**FARKAS & DONOHUE, LLC**
Attorneys for Defendant
Jane Byrd, LPN

By: _____
           Nancy Crosta Landale

Dated: April 2, 2012

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOAN MULLIN, ADMINISTRATRIX OF THE ESTATE OF ROBERT MULLIN, deceased and JOAN MULLIN, individually<br><br>    Plaintiffs,<br><br>    -vs-<br><br>THE STATE OF NEW JERSEY, THE DEPARTMENT OF CORRECTIONS OF THE STATE OF NEW JERSEY, SOUTH WOODS STATE PRISON, ADMINISTRATOR KAREN BALICKI, CENTRAL RECEPTION & ASSIGNMENT FACILITY (C.R.A.F.), DIRECTOR ROBERT PATERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, LPN, ERIN MARUSKY, R.N., TRENTON PSYCHIATRIC HOSPITAL, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 1-10 (as yet unidentified and unknown governmental, county, or state officials, supervisors, agents or employees), ABC ENTITIES 1-10 (as yet unidentified and unknown governmental entities, agencies, units or subdivisions.<br><br>    Defendants. | CIVIL ACTION<br><br>Civ. No.<br><br>COMPLAINT AND JURY DEMAND |

Plaintiffs, Joan Mullin as Administratrix of the Estate of Robert Mullin, and Joan Mullin, Individually, by way of complaint against defendants The State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, Administrator Karen Balicki, Central Reception & Assignment Facility (C.R.A.F.), Director Robert Paterson, Director Marie Dunlap-Pryce, Jane Byrd, L.P.N., Erin

Marusky, R.N., Trenton Psychiatric Hospital, Kintock Group, Mercer County, John Does 1-10 (as yet unidentified and unknown governmental, county, or state officials, supervisors, agents or employees), and ABC Entities 1-10 (as yet unidentified and unknown governmental entities, agencies, units or subdivisions, set forth the following:

## PARTIES

1.   At all relevant times herein plaintiffs **JOAN MULLIN, Administratrix Ad Prosequendum of the Estate of ROBERT MULLIN, JR.**, and **JOAN MULLIN**, individually, were and are domiciliaries and residents of the County of Mercer and State of New Jersey.

2.   At all relevant times herein defendant **THE STATE OF NEW JERSEY** was and is a public entity organized and existing pursuant to the laws of the State of New Jersey and the United States of America with a place of business at Tort and Contract Unit, Bureau of Risk Management, 25 West Market Street, 1st Floor, Trenton, NJ 08625.

3.   At all relevant times herein defendant **THE DEPARTMENT OF CORRECTIONS OF THE STATE OF NEW JERSEY ("DOC")** was and is a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the operation and management of correctional facilities in the State of New Jersey with a place of business at Whittlesey Road, P.O. Box 863, Trenton, NJ 0825.

4.   At all relevant times herein defendant **SOUTH WOODS STATE PRISON** was and is a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the

2

operation and management of a certain correctional facility, with a place of business at 215 South Burlington Road, Bridgeton, NJ 08302.

5.     At all relevant times herein defendant ADMINISTRATOR KAREN BALICKI was, upon information and belief a chief supervisory official and executive of the SOUTH WOODS STATE PRISON acting in her official capacity under color of law.

6.     At all relevant times herein defendant CENTRAL RECEPTION & ASSIGNMENT FACILITY ("CRAF") was and is a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the operation and management of a certain correctional facility, with a place of business at Stuyvesant Avenue, Trenton, NJ 08628-7450.

7.     At all relevant times herein defendant Director ROBERT PATTERSON was, upon information and belief, the chief supervisory official and executive of the DOC acting in his official capacity under color of law.

8.     At all relevant times herein MARIE DUNLAP-PRYCE was, upon information and belief a chief supervisory official and executive of the CRAF acting in her official capacity under color of law.

9.     At all relevant times herein defendant JANE BYRD, LPN, was, upon information and belief a health care provider and employee, agent or servant of defendants STATE OF NEW JERSEY, DOC, SOUTH WOODS STATE PRISON, and/or CRAF, engaged in the rendering of health care services including inmate evaluations.

3

10.     At all relevant times herein defendant ERIN MARUSKY, R.N. , was, upon information and belief a health care provider and employee, agent or servant of defendants STATE OF NEW JERSEY, DOC, SOUTH WOODS STATE PRISON, and/or CRAF, engaged in the rendering of health care services including inmate evaluations.

11.     At all relevant times herein defendant TRENTON PSYCHIATRIC HOSPITAL was and is, upon information and belief a corporation or entity organized and existing for the purposes of providing medical care and treatment to members of the public and others, with a place of business at 101 Sullivan Way, Ewing, NJ 08618.

12.     At all relevant times herein defendant the KINTOCK GROUP was and is, upon information and belief, a private company authorized to do business in the State of New Jersey, engaged in the business of providing therapeutic and other services to those persons transitioning back from incarceration into the community, known as "halfway houses" or "work houses," with a place of business at 4 South Industrial Boulevard, Bridgeton, NJ 08302.

13.     At all relevant times herein MERCER COUNTY was and is a public entity organized and existing under the laws of the State of New Jersey, engaged in the operation and management of correctional facilities, with a place of business at 640 South Broad Street, P.O. Box 8068, Trenton, NJ 08650.

14.     At all relevant times herein defendants JOHN DOES 1-10 and ABC ENTITIES 1-10 were and are as yet unidentified employees, agents, servants, contractors, supervisors, officials and/or public entities, agencies and subdivisions

4

responsible of the operation, management and control over certain correctional facilities and custodial facilities.

## NATURE OF ACTION & FACTUAL BACKGROUND

15.     Plaintiff's decedent and son, the 29 year old ROBERT MULLIN, JR, had been incarcerated and under the custodial care of defendants THE STATE OF NEW JERSEY, THE DOC, SOUTH WOODS STATE PRISON, CRAF and MERCER COUNTY (hereinafter the "PUBLIC ENTITY" defendants) for approximately six (6) to eight (8) years, through and including his date of death on January 17, 2009.

16.     In or about May 2008 he was transferred to a halfway house, or "work" house under the operation and management of defendant THE KINTOCK GROUP (hereinafter "KINTOCK"), under the auspices of and by contract and agreement with the PUBLIC ENTITY defendants.

17.     Plaintiff's decedent was scheduled to be released from KINTOCK sometime between April and June of 2009, after completing a course of therapy, work studies and services designed to allow an inmate to be rehabilitated and return to society and to his family.

18.     On or about January 15, 2009, while at KINTOCK plaintiff's decedent exhibited deterioration in mental and psychological status, and became emotionally labile with aggressive behavior.

19.     Thereafter plaintiff's decedent was transferred back to the custodial care of the PUBIC ENTITY defendants, at either SOUTH WOODS STATE PRISON or CRAF, under the supervision, management and control of the STATE OF NEW

JERSEY, the DOC, MERCER COUNTY, and supervisory officials ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON and DIRECTOR MARIE DUNLAP-PRYCE (hereinafter the "SUPERVISOR DEFENDANTS"), JOHN DOES 1-10 and ABC ENTITIES 1-10.

20.     Upon information and belief, at some point between January 15, 2009 and January 17, 2009, plaintiff also came under the care of and was treated by health care providers at defendant TRENTON PSYCHIATRIC HOSPITAL through its agents, servants and employees.

21.     Upon information and belief, at some point and time between January 15, 2009 and January 17, 2009 plaintiff's decedent was released to a single cell or area without adequate one on one and constant supervision and observation.

22.     On January 17, 2009 at approximately 4:23am plaintiff's decedent was found dead after hanging himself with what the limited records in plaintiff's possession indicate was a self-made noose made of a bed sheet.

23.     During all relevant times between January 15, 2009 and the time and date of death on January 17, 2009 plaintiff was under the custodial care of the PUBLIC ENTITY DEFENDANTS and SUPERVISOR DEFENDANTS as well as the defendant TRENTON PSYCHIATRIC HOSPITAL.

24.     The death certificate states the place of death as TRENTON PSYCHIATRIC HOSPITAL; the records from the DOC indicate plaintiff's location at death was in either SOUTHWOODS STATE PRISON or CRAF.

25.     On January 16, 2009, defendants JANE BYRD, L.P.N. and ERIN MARUSKY, R.N., acting under color of law in their official capacities as employees,

6

agents and servants of the PUBLIC ENTITY and SUPERVISOR DEFENDANTS and/or as individual medical providers contracted to work in the facilities of the PUBLIC ENTITY DEFENDANTS and SUPERVISOR DEFENDANTS undertook to examine and evaluate plaintiff's decedent.

26.     Despite a known history of suicide attempts, anxiety, depression and psychiatric instability, defendants JANE BYRD, L.P. and ERIN MARUSKY, R.N. determined that plaintiff's decedent was medically cleared to be released into the general population at the CRAF and/or SOUTHWOODS facility under the supervision, management and control of the PUBLIC ENTITY DEFENDANTS and/or to TRENTON PSYCHIATRIC HOSPITAL.

27.     Plaintiff's decedent had a known and documented history of suicide attempts and psychiatric disturbance dating from 2005, with records evidencing such knowledge on the part of the PUBLIC ENTITY DEFENDANTS, the SUPERVISOR DEFENDANTS, defendants JANE BYRD, L.P., ERIN MARUSKY, R.N, TRENTON PSYCHIATRIC HOSPITAL and KINTOCK from 2005, 2007, 2008 and 2009 up to and including his final evaluation prior to his death.

28.     Plaintiffs JOAN MULLIN, as Administratrix Ad Prosequendum of the Estate of ROBERT MULLIN, JR., and JOAN MULLIN, individually, institute this action for compensatory and punitive damages arising out of the unlawful actions and conduct of the PUBLIC ENTITY DEFENDANTS,   the SUPERVISOR DEFENDANTS, defendants JANE BYRD, L.P. ERIN MARUSKY, R.N, TRENTON PSYCHIATRIC HOSPITAL and KINTOCK,   JOHN DOES 1-10 and ABC ENTITIES 1-10 in violating the civil rights of plaintiff's decedent protected by and

secured under the provisions of the First, Fourth, Sixth, Eighth, Ninth and Fourteenth amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1985 (2) *et. seq.*

29.     At all relevant times herein, the PUBLIC ENTITY DEFENDANTS, the SUPERVISOR DEFENDANTS, defendants JANE BYRD, L.P. and ERIN MARUSKY, R.N, TRENTON PSYCHIATRIC HOSPITAL and KINTOCK, JOHN DOES 1-10 and ABC ENTITIES 1-10 were acting under color of state law and within the scope of their authority as agents, servants and employees of said defendants.

30.     Plaintiffs also institute this action pursuant to the laws of the State of New Jersey for damages arising by reason of wrongful death, pain and suffering, hedonistic damages, negligence, infliction of mental distress, the failure to properly hire, train and supervise staff, employees, agents and servants, abuse of authority, failure to provide adequate medical care and treatment, malpractice and negligence.

31.     Plaintiffs were permitted to file a late Notice of Claim by Order of the Hon. Sue Regan dated February 10, 2010, which were served accordingly pursuant to New Jersey Statutes Title 59:8-4 and signed by plaintiff's representative, Shelley L. Stangler, Esq. /upon the PUBLIC ENTITY DEFENDANTS, SUPERVISOR DEFENDANTS, TRENTON PSYCHIATRIC HOSPITAL, KINTOCK, JOHN DOES 1-10 and ABC ENTITIES 1-10.

32.     More than six (6) months have elapsed since service of plaintiff's Notices of Claims and the claims remain unresolved.

33.     This action is commenced within two (2) years from the date of the death, January 17, 2009.

## FIRST COUNT

34.     Plaintiffs repeat each and every allegation contained in paragraphs one (1) through thirty-three (33) as if set forth fully herein at length.

35.     At all relevant times herein, the **PUBLIC ENTITY DEFENDANTS**, the **SUPERVISOR DEFENDANTS**, defendants **JANE BYRD, L.P.** and **ERIN MARUSKY, R.N,   TRENTON PSYCHIATRIC HOSPITAL** and **KINTOCK, JOHN DOES 1-10** and **ABC ENTITIES 1-10**, through their agents, servants and employees were acting under color of law under the state and federal Constitutions, statutes, laws, charters, ordinances, rules, regulations, customs, usages and practices of the subject governmental departments, agencies and entities and within the scope of their authority as employees and/or officers of the **PUBLIC ENTITY** defendants.

36.     During all relevant times herein the aforementioned defendants acted jointly and in concert with each other, and conspired and agreed between and amongst themselves to commit the unlawful violation of civil rights upon plaintiff's decedent **ROBERT MULLIN** (hereinafter "**MULLIN**") as well as to fail to provide proper medical care to **MULLIN**.

37.     In particular, defendants agreed and conspired not to provide sufficient and adequate medical care to **MULLIN**, not to provide sufficient and adequate supervision, to violate protocols and policies designed to stop and avoid suicide by those persons, such as plaintiff's decedent, under the control and custody of the defendants, to fail to monitor and supervise **MULLIN**, to fail to intervene or protect **MULLIN** from

danger and imminent physical harm, and to allow MULLIN to have the ability to commit suicide.

38.     During all relevant times herein the PUBLIC ENTITY DEFENDANTS, the SUPERVISOR DEFENDANTS, defendants JANE BYRD, L.P. and ERIN MARUSKY, R.N, TRENTON PSYCHIATRIC HOSPITAL, KINTOCK, JOHN DOES 1-10 and ABC ENTITIES 1-10, by and through their agents, servants, and employees acted with deliberate and conscious indifference to MULLIN'S constitutional rights which violations arose out of a pattern or custom or policy and practice by each of the defendants, in permitting and allowing MULLIN to be unsupervised, alone, and with the wherewithal to do harm to himself, in failing to provide medical attention, in failing to enact, implement, promulgate and enforce policies, procedures and standards with respect to suicide watch and avoidance,   inadequate recordkeeping, in failing to intervene, in exposing plaintiff's decedent to imminent bodily harm, which was foreseeable under the circumstances, in allowing unsafe conditions to exist in the defendant correctional facilities, infirmaries and hospital, in failing to properly hire, train and supervise their employees in the proper conduct of their duties, among other acts and ommissions.

39.     At all relevant times herein the defendants, individually and collectively, through their agents, servants and employees were acting within the scope of their employment and duties at the time of the subject events.

40.     At all relevant times herein the defendants, individually and collectively, through their agents, servants and employees, by reason of their acts, omissions, deliberate and conscious indifference to the rights of MULLIN, and by a pattern of abuse

10

and violation of procedure and protocol, and failure to provide medical treatment inclusive of mental health services, and by their failure to provide MULLIN with a safe environment and by putting him in a position to harm himself, deprived MULLIN of his rights, privileges and immunities secured by the Constitution and laws of the United States, and are liable to the plaintiffs pursuant to Title 42 Sections 1983 and 1985 of the United States Code and the New Jersey Civil Rights Statute Title 10 and under state common law.

41.    The defendants, their agents, servants and employees allowed, condoned and permitted the circumstances under which suicide and harm could occur, and with deliberate indifference failed to prevent it, failed to intervene, failed to provide proper medical care and services, and subjected MULLIN to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

42.    The defendants, their agents, servants and employees deprived MULLIN of his rights, privileges and immunities secured by the Constitution and laws of the United States including violation of his Fourteenth Amendment rights of due process, equal protection, his First Amendment rights, his Fourth Amendment rights and his rights of privacy, as well as his Fifth and Sixth Amendment rights.

43.    At all relevant times herein the aforedescribed acts were committed under color of law within the authority of the agents, servants and employees of the defendants.

44.    The defendants, individually and collectively acted pursuant to official policy and/or custom and to deprive plaintiff's decedent of his constitutional rights under 42 U.S. Code sections 1983 and 1985.

11

45.    By reason of the foregoing, defendants violated the civil rights of plaintiff's decedent.

46.    By reason of the foregoing, and as a direct and proximate result of defendants' constitutional violations, plaintiff's decedent MULLIN sustained serious and severe injuries which resulted in his death.

47.    The decedent left him surviving his mother, JOAN MULLIN, and other next of kin.

48.    As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff's decedent MULLIN was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

49.    As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff JOAN MULLIN has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

50.    By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff JOAN MULLIN has been damaged.

51.    By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff JOAN MULLIN has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

52.    By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

53.    WHEREFORE, plaintiffs JOAN MULLIN, as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR., and JOAN MULLIN

12

individually, demands judgment against defendants, **THE STATE OF NEW JERSEY, THE DEPARTMENT OF CORRECTIONS OF THE STATE OF NEW JERSEY, SOUTH WOODS STATE PRISON, ADMINISTRATOR KAREN BALICKI, CENTRAL RECEPTION & ASSIGNMENT FACILITY (C.R.A.F.), DIRECTOR ROBERT PATERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, LPN, ERIN MARUSKY, R.N., TRENTON PSYCHIATRIC HOSPITAL, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 1-10** and **ABC ENTITIES 1-10** jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

<u>SECOND COUNT</u>

54.   Plaintiffs repeat and reallege each and every allegation contained in paragraph one (1) through fifty-three (53) of the complaint as if set forth fully herein at length.

55.   Defendants, individually and collectively, through their agents, servants and employees acted pursuant to official policy and/or custom to deprive plaintiff's decedent of his constitutional rights under Title 10 of the New Jersey statutes, known as the New Jersey Civil Rights Act.

56.   By reason of the foregoing, and as a direct and proximate result of defendants' constitutional violations, plaintiff's decedent MULLIN sustained serious and severe injuries which resulted in his death.

57.   The decedent left him surviving his mother, **JOAN MULLIN**, and other next of kin.

13

58.    As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff's decedent MULLIN was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

59.    As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff JOAN MULLIN has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

60.    By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff JOAN MULLIN has been damaged.

61.    By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff JOAN MULLIN has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

62.    By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

63.    WHEREFORE, plaintiffs JOAN MULLIN , as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR., and JOAN MULLIN individually, demands judgment against defendants, THE STATE OF NEW JERSEY, THE DEPARTMENT OF CORRECTIONS OF THE STATE OF NEW JERSEY, SOUTH WOODS STATE PRISON, ADMINISTRATOR KAREN BALICKI, CENTRAL RECEPTION & ASSIGNMENT FACILITY (C.R.A.F.), DIRECTOR ROBERT PATERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, LPN, ERIN MARUSKY, R.N., TRENTON PSYCHIATRIC HOSPITAL, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 1-10 and ABC ENTITIES

14

1-10 jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

## THIRD COUNT

64.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs one (1) through sixty-three (63) of the Complaint as if set forth fully herein at length.

65.   At all relevant times herein defendants were under a duty to act reasonably in the performance of their duties as corrections officers, staff, medical providers and supervisors in the control, maintenance, operation, handling and management of the jail and correctional facilities and/or in the hospital, in the provision of medical care and treatment, in properly supervising and monitoring plaintiff's decedent, in following and promulgating appropriate policies and procedures with respect to those who are likely to harm themselves, including the commission of suicide, and to prevent such harm from occurring, and to intervene to avoid and prevent such harm from occurring, and in providing proper training to those with the responsibility for the care and management of those under custodial or hospital care.

66.   At all relevant times herein defendants were under a duty to act reasonably in following and maintaining proper protocol, policy, procedures, rules and guidelines enacted and propounded with respect to their duties and the care and management of plaintiff's decedent and others similarly situated.

67.   Defendants, individually and collectively, were negligent and careless in their failure to properly hire, retain, train and supervise officers, staff, employees, agents,

lf5

servants and medical providers with respect to the evaluation, classification, care and management of plaintiff's decedent, in their failure to properly implement, enact, enforce, follow and maintain proper protocol, policy, procedures, rules and guidelines; in their failure to intervene to prevent the suicide, in their failure to prevent the suicide, in their failure to manage and operate their facilities in a reasonable manner so as to prevent the occurrence, and were negligent and careless in the failure to provide adequate medical attention and treatment, among other acts of negligence and omissions.

68.     Defendants, individually and collectively were negligent and careless in failing to properly discipline their staff, employees, agents and servants despite knowledge of their failure to take proper action to avoid the subject occurrence and similar occurrences and to prevent those in plaintiff's decedent's position from harming themselves.

69.     The personal injuries, death and damages suffered by plaintiff's decedent were caused solely as a result of the negligence and carelessness of the defendants, individually and collectively.

70.     By reason of the foregoing, and as a direct and proximate result of defendants' negligence as aforedescribed, plaintiff's decedent MULLIN sustained serious and severe injuries which resulted in his death.

71.     The decedent left him surviving his mother, JOAN MULLIN, and other next of kin.

72.     As a direct and proximate result of the negligence as aforedescribed, plaintiff's decedent MULLIN was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

16

73. As a direct and proximate result of the negligence as aforedescribed, plaintiff JOAN MULLIN has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

74. By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff JOAN MULLIN has been damaged.

75. By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff JOAN MULLIN has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

76. By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

77. WHEREFORE, plaintiffs JOAN MULLIN as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR., and JOAN MULLIN individually, demands judgment against defendants, THE STATE OF NEW JERSEY, THE DEPARTMENT OF CORRECTIONS OF THE STATE OF NEW JERSEY, SOUTH WOODS STATE PRISON, ADMINISTRATOR KAREN BALICKI, CENTRAL RECEPTION & ASSIGNMENT FACILITY (C.R.A.F.), DIRECTOR ROBERT PATERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, LPN, ERIN MARUSKY, R.N., TRENTON PSYCHIATRIC HOSPITAL, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 1-10 and ABC ENTITIES 1-10 jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

17

## FOURTH COUNT

78. Plaintiffs repeat and reallege each and every allegation contained in paragraphs one (1) through seventy-seven (77) of the Complaint as if set forth fully herein at length.

79. During the period he remained in their custody and care, the defendants individually and collectively, through their agents, servants and employees, engaged in actions intended to inflict severe emotional trauma upon plaintiff MULLIN.

80. By reason of the deliberate indifference and reckless disregard for the rights of MULLIN, and of the deprivation of constitutional rights as aforedescribed, including the intentional failure to follow policies and procedures, the failure to provide adequate medical care and treatment, the failure to supervise and monitor, the failure to train, MULLIN was subjected to intentional infliction of emotional distress.

81. The emotional distress was severe and outrageous.

82. The emotional distress was of such character that no reasonable person could be expected to endure it.

83. In particular, the emotional distress aggravated and exacerbated MULLIN'S previously diagnosed psychiatric conditions which increased the likelihood and foreseeability of self-inflicted harm, including suicide.

84. In addition or in the alternative, plaintiff's decedent suffered emotional harm due to the negligence and carelessness of the defendants.

85. By reason of the aforesaid intentional and negligent infliction of mental distress, plaintiff MULLIN was caused to suffer pain, suffering, humiliation, embarrassment and anguish, all to his damage.

18

86.   By reason of the foregoing infliction of mental distress, both intentional and negligent, plaintiff MULLIN has been damaged.

87.   The decedent left him surviving his mother, JOAN MULLIN, and other next of kin.

88.   As a direct and proximate result of the negligence as aforedescribed, plaintiff's decedent MULLIN was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

89.   As a direct and proximate result of the negligence as aforedescribed, plaintiff JOAN MULLIN has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

90.   By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff JOAN MULLIN has been damaged.

91.   By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff JOAN MULLIN has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

92.   By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

93.   WHEREFORE, plaintiffs JOAN MULLIN , as Administratrix Ad Prosequendum of the ESTATE OF ROBERT MULLIN, JR., and JOAN MULLIN individually, demands judgment against defendants, THE STATE OF NEW JERSEY, THE DEPARTMENT OF CORRECTIONS OF THE   STATE OF NEW JERSEY, SOUTH  WOODS  STATE  PRISON,  ADMINISTRATOR  KAREN  BALICKI,

CENTRAL RECEPTION & ASSIGNMENT FACILITY (C.R.A.F.),  DIRECTOR ROBERT PATERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, LPN, ERIN MARUSKY, R.N., TRENTON PSYCHIATRIC HOSPITAL, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 1-10 and ABC ENTITIES 1-10 jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

## FIFTH COUNT

94.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs one (1) through ninety-one (91) as if set forth herein fully at length.

95.  The **PUBLIC ENTITY DEFENDANTS, SUPERVISOR DEFENDANTS, TRENTON PSYCHIATRIC HOSPITAL** and **KINTOK's** unlawful acts constitute abuse of process.

96.  By reason of the foregoing and as a direct and proximate result of defendants' abuse of process, plaintiff's decedent MULLIN sustained serious and severe injuries which resulted in his death.

97.  The decedent left him surviving his mother, JOAN MULLIN, and other next of kin.

98.  As a direct and proximate result of the abuse of process, plaintiff's decedent MULLIN was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

99.  As a direct and proximate result of the abuse of process as aforedescribed, plaintiff JOAN MULLIN has been damaged and has been permanently deprived of the

20

services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

100.   By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff JOAN MULLIN has been damaged.

101.   By reason of the foregoing abuse of process and wrongful death of plaintiff's decedent plaintiff JOAN MULLIN has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

102.   By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

103.   WHEREFORE, plaintiffs JOAN MULLIN , as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR., and JOAN MULLIN individually, demands judgment against defendants, THE STATE OF NEW JERSEY, THE DEPARTMENT OF CORRECTIONS OF THE   STATE OF NEW JERSEY, SOUTH WOODS STATE PRISON, ADMINISTRATOR KAREN BALICKI, CENTRAL RECEPTION & ASSIGNMENT FACILITY (C.R.A.F.), DIRECTOR ROBERT PATERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, LPN, ERIN MARUSKY, RN, TRENTON PSYCHIATRIC HOSPITAL, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 1-10 and ABC ENTITIES 1-10 jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

<u>SIXTH COUNT</u>

104.   Plaintiffs repeat and reallege each and every allegation contained in

21

paragraphs one (1) through one-hundred (100) of the Complaint as if set forth fully herein at length.

105.  At all relevant times herein defendants, individually and collectively, undertook to diagnose and treat any medical conditions suffered by plaintiff's decedent, including mental health, emotional, psychological and psychiatric care and treatment, and were under a duty to do so.

106.  At all relevant times herein defendants, individually and collectively, undertook to diagnose and treat plaintiff MULLIN.

107.  At all relevant times herein defendants, individually and collectively, and in particular defendants JANE BYRD, LPN, ERIN MARUSKY, R.N.,  and TRENTON PSYCHIATRIC HOSPITAL through its agents, servants and employees and/or contractors held themselves out to plaintiff's decedent and facilities/persons able to and furnishing medical treatment and medical care.

108.  At all relevant times herein defendants individually and collectively, and in particular defendants JANE BYRD, LPN, ERIN MARUSKY, R.N.,  and TRENTON PSYCHIATRIC HOSPITAL through its agents, servants and employees and/or contractors owed a duty to the plaintiff's decedent and to others likewise situated to use reasonably prudent and non-negligent medical care.

109.  Between January 15, 2009 and January 17, 2009 plaintiff's decedent came under the care of the medical staff, infirmary, agents, servants and employees and/or contractors of the defendants.

110.  At all relevant times herein defendants held themselves out as maintaining

22

adequate and competent agents, servants and employees and further warranted and represented that their agents, servants and/or employees were qualified and trained to provide proper medical care and treatment as required and further warranted and represented themselves as being equipped in sufficient manner to render such proper care and treatment, including care and treatment involving mental health, emotional stability, psychological and psychiatric care.

111.   The defendants, individually and collectively failed to exercise reasonable and ordinary care in the treatment of plaintiff's decedent, failed to exercise that degree of care to be exercised by a hospital and medical staff in similar circumstances and were negligent and careless in the care and treatment of plaintiff's decedent MULLIN.

112.   The defendants, individually and collectively failed to exercise reasonable and ordinary care in the treatment of MULLIN, failed to exercise that degree of care to be expected by a hospital, nurses, and medical providers in correctional facilities in similar circumstances and were negligent and careless in the care and treatment of MULLIN.

113.   The defendants, individually and collectively, their agents, servants, employees and contractors were negligent and careless in failing to hire, train and supervise adequate staff, in failing to recognize various signs symptoms, indications and manifestations of medical and psychological problems in MULLIN, in failing to maintain adequate and proper protocols and standards for the handling of persons in the condition of MULLIN, in failing to maintain proper record keeping protocol; in failing to properly diagnosis MULLIN'S condition and failing to provide adequate care, failing to appreciate the likelihood that MULLIN could or would inflict harm to himself, failed to

provide proper counselling and guidance, failing to properly evaluate his mental state so as to avoid the occurrence, and in otherwise failing and omitting to maintain that degree of care and treatment for sick patients that a prudent hospital and prudent doctors, interns, nurses, attendant and other medical providers would have maintained under like circumstances and like conditions.

114. By reason of the aforesaid medical and nursing malpractice, plaintiff's decedent was caused to suffer severe, painful and permanent personal injuries, sustained severe nervous shock, mental anguish and great physical pain, was prevented from engaging in his usual activities and committed suicide.

115. By reason of the foregoing, and as a direct and proximate result of defendants' medical negligence as aforedescribed, plaintiff's decedent MULLIN sustained serious and severe injuries which resulted in his death.

116. The decedent left him surviving his mother, JOAN MULLIN, and other next of kin.

117. As a direct and proximate result of the medical negligence as aforedescribed, plaintiff's decedent MULLIN was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

118. As a direct and proximate result of the medical negligence as aforedescribed, plaintiff JOAN MULLIN has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

119. By reason of the foregoing medical negligence and wrongful death of plaintiff's decedent, plaintiff JOAN MULLIN has been damaged.

24

120.   By reason of the foregoing medical negligence and wrongful death of plaintiff's decedent plaintiff JOAN MULLIN has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

121.   By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

122.   WHEREFORE, plaintiffs JOAN MULLIN , as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR.,  and JOAN MULLIN individually, demands judgment against defendants, THE STATE OF NEW JERSEY, THE DEPARTMENT OF CORRECTIONS OF THE   STATE OF NEW JERSEY, SOUTH WOODS STATE PRISON, ADMINISTRATOR KAREN BALICKI, CENTRAL RECEPTION & ASSIGNMENT FACILITY (C.R.A.F.),  DIRECTOR ROBERT PATERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, LPN,  ERIN MARUSKY R.N., TRENTON PSYCHIATRIC HOSPITAL, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 1-10 and ABC ENTITIES 1-10 jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

SHELLEY L. STANGLER, P.C.
Attorney for Plaintiffs

BY: _____
SHELLEY L. STANGLER, ESQ.

Dated: January 14, 2011

25

## DEMAND FOR JURY TRIAL

Plaintiff's demands a trial by jury of all issues so triable.

Dated: January 14, 2011

BY: _____
SHELLEY L. STANGLER, ESQ.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:24-4, SHELLEY L. STANGLER, ESQ. is hereby designated

as trial counsel on behalf of the plaintiff in the within matter.

Dated: January 14, 2011

BY: _____
SHELLEY L. STANGLER, ESQ.

26

## CERTIFICATION

SHELLEY L. STANGLER, ESQ., of full age, certifies:

1.    SHELLEY L. STANGLER, P.C. has been retained to represent plaintiffs, JOAN MULLIN, as Administratrix of the Estate of ROBERT MULLIN, JR, and JOAN MULLIN individually in connection with the within matter.  I am the attorney in charge of the case.

2.    The matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no other action or arbitration proceeding is contemplated by plaintiff.

3.    There are no other parties who should be joined in this action.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

SHELLEY L. STANGLER

DATED: January 14, 2011

27

# EXHIBIT 2

*Docket Entry #34, Exhibit A*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOAN MULLIN, ADMINISTRATRIX OF THE
ESTATE OF ROBERT MULLIN, deceased and
JOAN MULLIN, individually,
          Plaintiffs,

      v.

ADMINISTRATOR KAREN BALICKI, in her
personal, individual and professional capacities
representing the State of New Jersey, the
Department of Corrections of the State of New
Jersey, South Woods State Prison, and Central
Reception & Assignment Facility (C.R.A.F.),
DIRECTOR ROBERT PATTERSON, in his
personal, individual and professional capacities,
representing the State of New Jersey, the
Department of Corrections of the State of New
Jersey, South Woods State Prison, and Central
Reception & Assignment Facility (C.R.A.F.)
DIRECTOR MARIE DUNLAP-PRYCE, in her
personal, individual and professional capacities,
representing the State of New Jersey, the
Department of Corrections of the State of New
Jersey, South Woods State Prison, and Central
Reception & Assignment Facility (C.R.A.F.),
JANE BYRD, L.P.N., in her personal, individual
and professional capacities, ERIN MARUSKY,
R.N., in her personal, individual and professional
capacities, OFFICER DIMLER, in his personal,
individual and professional capacities BEATRICE
TEEL, R.N., in her personal, individual and
professional capacities, CHIEF EXECUTIVE
OFFICER TERESA MCQUAIDE, RN, APRN-
BC, in her personal, individual and professional
capacities representing the Trenton Psychiatric
Hospital; KINTOCK GROUP, MERCER
COUNTY, JOHN DOES 4-10 (as yet unidentified
and unknown governmental, county, or state
officials, supervisors, agents or employees) in their
personal, individual and professional capacities,
ABC ENTITIES 1-10 (as yet unidentified and
unknown governmental entities, agencies, units or
subdivisions,
          Defendants.

CIVIL ACTION NO. 11-00247
(MLS-LHG)

SECOND AMENDED COMPLAINT
AND JURY DEMAND

Plaintiffs, Joan Mullin as Administratrix of the Estate of Robert Mullin, and Joan Mullin, Individually, by way of complaint against defendants, **ADMINISTRATOR KAREN BALICKI** in her personal, individual and professional capacities representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.); **DIRECTOR ROBERT PATTERSON** in his personal, individual and professional capacities representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.); **DIRECTOR MARIE DUNLAP-PRYCE** in her personal, individual and professional capacities representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.); **CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE, RN, APRN-BC,** in her personal, individual and professional capacities representing the Trenton Psychiatric Hospital; **JANE BYRD, L.P.N.,** in her personal, individual and professional capacities; **ERIN MARUSKY, R.N.** in her personal, individual and professional capacities; **OFFICER DIMLER** in his personal, individual and professional capacities; **BEATRICE TEEL, R.N.** in her personal, individual and professional capacities; **KINTOCK GROUP, MERCER COUNTY, JOHN DOES 4-10** (as yet unidentified and unknown governmental, county, or state officials, supervisors, agents or employees) in their individual and professional capacities, and **ABC ENTITIES 1-10** (as yet unidentified and unknown governmental entities, agencies, units or subdivisions, set forth the following:

<u>PARTIES</u>

1.     At all relevant times herein plaintiffs **JOAN MULLIN, Administratrix Ad Prosequendum of the Estate of ROBERT MULLIN, JR.,** and **JOAN MULLIN,**

individually, were and are domiciliaries and residents of the County of Mercer and State of New Jersey.

2.      At all relevant times herein defendant **ADMINISTRATOR KAREN BALICKI** was, upon information and belief a chief supervisory official and executive of the South Woods State Prison, a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the operation and management of a certain correctional facility, with a place of business at 215 South Burlington Road, Bridgeton, NJ 08302, acting in her personal, individual and official capacities under color of law.

3.      At all relevant times herein defendant **DIRECTOR ROBERT PATTERSON** was, upon information and belief, the chief supervisory official and executive of the Department of Corrections for the State of New Jersey ("DOC"), a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the operation and management of correctional facilities in the State of New Jersey with a place of business at Whittlesey Road, P.O. Box 863, Trenton, NJ 0825, acting in his personal, individual and official capacities under color of law.

4.      At all relevant times herein **MARIE DUNLAP-PRYCE** was, upon information and belief a chief supervisory official and executive of Central Reception & Assignment Facility ("C.R.A.F".), a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the operation and management of a certain correctional facility, with a place of business at Stuyvesant Avenue, Trenton, NJ 08628-7450, acting in her personal, individual and official capacities under color of law.

5.      At all relevant times herein defendant **CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC,** was, upon information and belief a chief supervisory

3

official and executive of Trenton Psychiatric Hospital, a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and a corporation or entity organized and existing for the purposes of providing medical care and treatment to members of the public and others, with a place of business at 101 Sullivan Way, Ewing, NJ 08618, acting in her personal, individual and official capacities under color of law, and is substituted for **John Doe No. 3.**

6.       At all relevant times herein defendant **JANE BYRD, L.P.N.,** was, upon information and belief a health care provider and employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the rendering of health care services including inmate evaluations, and acting in her personal, individual and official capacities under color of law.

7.       At all relevant times herein defendant **ERIN MARUSKY, R.N.,** was, upon information and belief a health care provider and employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the rendering of health care services including inmate evaluations, and acting in her personal, individual and official capacities under color of law.

8.       At all relevant times herein defendant **OFFICER DIMLER,** first name unknown, was, upon information and belief a corrections officer and employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the supervision of inmates, and acting in his personal, individual and official capacities under color of law, and is substituted for **John Doe No. 1.**

9.       At all relevant times herein defendant **BEATRICE TEEL, R.N.,** was, upon information and belief a health care provider and employee, agent or servant of the State of New

4

Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the rendering of health care services including inmate evaluations, and acting in her personal, individual and official capacities under color of law, and is substituted for **John Doe No. 2**.

10.    At all relevant times herein defendant the **KINTOCK GROUP** was and is, upon information and belief, a private company authorized to do business in the State of New Jersey, engaged in the business of providing therapeutic and other services to those persons transitioning back from incarceration into the community, known as "halfway houses" or "work houses," with a place of business at 4 South Industrial Boulevard, Bridgeton, NJ 08302.

11.    At all relevant times herein defendant **MERCER COUNTY** was and is a public entity organized and existing under the laws of the State of New Jersey, engaged in the operation and management of correctional facilities, with a place of business at 640 South Broad Street, P.O. Box 8068, Trenton, NJ 08650.

12.    At all relevant times herein defendants **JOHN DOES 4-10** and **ABC ENTITIES 1-10** were and are as yet unidentified employees, agents, servants, contractors, supervisors, officials and/or public entities, agencies and subdivisions responsible for the operation, management and control over certain correctional facilities and custodial facilities. **JOHN DOES 3-10** are being sued in their individual, professional and personal capacities.

<u>NATURE OF ACTION & FACTUAL BACKGROUND</u>

13.    Plaintiff's decedent and son, the 29 year old **ROBERT MULLIN, JR**, had been incarcerated and under the custodial care of individual defendants **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, MARIE DUNLAP-PRYCE** and **CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC** (hereinafter the

"SUPERVISOR DEFENDANTS") for approximately six (6) to eight (8) years, through and including his date of death on January 17, 2009.

14.    In or about May 2008 he was transferred to a halfway house, or "work" house under the operation and management of defendant **THE KINTOCK GROUP** (hereinafter "KINTOCK"), under the auspices of and by contract and agreement with the **SUPERVISOR DEFENDANTS**.

15.    Plaintiff's decedent was scheduled to be released from **KINTOCK** sometime between April and June of 2009, after completing a course of therapy, work studies and services designed to allow an inmate to be rehabilitated and return to society and to his family.

16.    On or about January 15, 2009, while at **KINTOCK** plaintiff's decedent exhibited deterioration in mental and psychological status, and became emotionally labile with aggressive behavior.

17.    Thereafter plaintiff's decedent was transferred back to either South Woods State Prison or C.R.A.F., under the custodial care, supervision, management and control of the **SUPERVISOR DEFENDANTS, JOHN DOES 4-10 and ABC ENTITIES 1-10.**

18.    Upon information and belief, at some point between January 15, 2009 and January 17, 2009, plaintiff also was treated by and was under the custodial care, supervision, management and control of the **SUPERVISOR DEFENDANTS,** including but not limited to **CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE, RN, APRN-BC,** Chief Executive Officer of the Trenton Psychiatric Hospital, and **JOHN DOES 4-10** and **ABC ENTITIES 1-10.**

19.    Upon information and belief, at some point and time between January 15, 2009 and January 17, 2009 plaintiff's decedent was released to a single cell or area without adequate

one on one and constant supervision and observation. Defendant **OFFICER DIMLER** was the last person to see decedent alive, according to the Medical Examiner's Report.

20.     On January 17, 2009 at approximately 4:23 AM, defendant **OFFICER DIMLER** found plaintiff's decedent unresponsive after hanging himself with what the limited records in plaintiff's possession indicate was a self-made noose made of a bed sheet.

21.     Defendant **BEATRICE TEEL, R.N.** was summoned to assist decedent after he was found unresponsive.

22.     Decedent was pronounced dead at 4:49 AM.

23.     During all relevant times between January 15, 2009 and the time and date of death on January 17, 2009, decedent plaintiff was under the custodial care of the **SUPERVISOR DEFENDANTS.**

24.     The original death certificate states the place of death as Trenton Psychiatric Hospital; the records from the DOC indicate plaintiff's location at death was in either South Woods State Prison or C.R.A.F., and the amended death certificate identifies the location of death as C.R.A.F.  A detective informed plaintiff that her son, plaintiff's decedent, had died at Trenton Psychiatric Hospital.

25.     On January 16, 2009, defendants **JANE BYRD, L.P.N., ERIN MARUSKY, R.N.,** and **BEATRICE TEEL, R.N.,** acting under color of law in their personal, individual and official capacities as employees, agents and servants of the **SUPERVISOR DEFENDANTS** and/or as individual medical providers contracted to work in the facilities managed by the **SUPERVISOR DEFENDANTS,** undertook to examine and evaluate plaintiff's decedent.

26.     Decedent's medical record obtained from the DOC reflects numerous entries from 2005 until his death evidencing his past suicide attempts, his diagnosis as a suicide risk, his

7

family history of suicide, his history of mental illness including anxiety, depression and mood disorder, and his use of psychotropic medication for his psychiatric conditions.

27.    On several occasions, the record reflects that decedent answered "yes" to the question "have you ever been hospitalized or treated for psychiatric illness", and "have you ever considered or attempted suicide".

28.    Plaintiff Joan Mullin requested records and information regarding any investigation, follow up reports, internal affairs considerations, or any evidence of implementation of policy, procedure and standards necessary to identify and prevent occurrences such as the decedent's suicide. None were provided. Specific entries in the medical record are as follows:

29.    On August 19, 2005, the decedent Robert Mullin stated during the nursing intake that he had considered or attempted suicide, and that in April 2005 he had attempted suicide. The notes on that date also reflect that the decedent was taking "psych medications."

30.    On September 26, 2007, during a nursing intake, the decedent answered "yes" to the question "have you ever been hospitalized or treated for psychiatric illness," and "have you ever considered or attempted suicide." The notes on that date reflect again that decedent was taking "psych medications."

31.    On September 28, 2007, notes in the medical record reflect that decedent had a diagnosis of a mood disorder.

32.    On October 3, 2007, notes in the medical record reflect that that decedent had a diagnosis of a mood disorder, and he was taking the psychotropic medication Doxepin, and he was referred to "Mental Health."

33.     On November 16, 2007, and on at least seven other occasions in the following two-plus years until decedent's death, notes in the medical records reflect the diagnosis of "mood disorder," a family history of suicide, and a history of being a suicide risk.

34.     At least one of these entries details that the decedent was being treated for a psychiatric illness, namely depression and anxiety.

35.     On January 14, 2009, three days before decedent's death, the medical record reflects that the inmate was seen at South Woods State Prison, following a transfer from Kintock to Detention/ECU, and the diagnoses of "mood disorder," a family history of suicide, and a history of being a suicide risk.

36.     On January 16, 2009, an entry in the medical record identifies a "nursing intake" completed by defendant **JANE BYRD, L.P.N.**  During that intake the decedent answered "Yes" to the question "have you ever been hospitalized or treated for psychiatric illness," and to the question "have you ever considered or attempted suicide."  The medical record on that date also includes the diagnoses of "mood disorder," a family history of suicide, and a history of being a suicide risk .

37.     A subsequent entry on January 16, 2009, signed by defendant **ERIN MARUSKY, R.N.** at 6:26 PM, states the location of care is "Central Reception & Assignment Facility – Main," and the narrative "[inmate] medically cleared for placement on S3 ... Erin Marusky, R.N. January 16, 2009 6:25 PM."

38.     On January 17, 2009 an entry in the medical record identified the event as "internal other: death of inmate."  This entry shows that defendant **BEATRICE TEEL, R.N.** was with an unnamed officer in the hallway on the floor at 4:24 AM, and CPR was performed by unnamed officers or medical providers, at which time the decedent was unresponsive.

9

39.     A further entry in the record on Jan. 17, 2009, signed by **BEATRICE TEEL,** **R.N.** and showing her as the provider, identifies the event as "Emergency Report: Medical Emergency for code 66/late entry" repeats the entry, and adds a diagnosis list, including the history of mood disorder, family history of suicide, and that decedent was a suicide risk.

40.     Despite a known history of suicide attempts, anxiety, depression and psychiatric instability, defendants **JANE BYRD, L.P.N.** and **ERIN MARUSKY, R.N.** determined on Jan. 16, 2009 that plaintiff's decedent was medically cleared to be released into the general population at the C.R.A.F. and/or South Woods State Prison facility under the supervision, management and control of the **SUPERVISOR DEFENDANTS.**

41.     Despite a known history of decedent's suicide attempts, anxiety, depression and psychiatric instability, defendant **BEATRICE TEEL, R.N.,** on Jan. 16 and 17, 2009, failed to provide adequate medical supervision and nursing care to decedent in the hours leading up to decedent's suicide, failed to intervene to prevent the suicide.

42.     Despite a known history of decedent's suicide attempts, anxiety, depression and psychiatric instability, defendant **OFFICER DIMLER** on Jan. 16 and 17, 2009 failed to provide adequate protection and supervision to decedent in the hours leading up to decedent's suicide and failed to intervene to prevent the suicide.

43.     Plaintiff's decedent had a known and documented history of suicide attempts and psychiatric disturbance dating from 2005, 2007, 2008 and 2009 up to and including his final evaluation prior to his death, which was known to, and should have been known to, the **SUPERVISOR DEFENDANTS,** defendants **JANE BYRD, L.P.N., ERIN MARUSKY, R.N,** **BEATRICE TEEL, R.N., OFFICER DIMLER,** and **KINTOCK.**

44.     Plaintiffs **JOAN MULLIN**, as **Administratrix Ad Prosequendum of the** Estate of ROBERT MULLIN, JR., and **JOAN MULLIN, individually,** institute this action for compensatory and punitive damages arising out of the unlawful actions and conduct of the **SUPERVISOR DEFENDANTS,** defendants **JANE BYRD, L.P.N, ERIN MARUSKY, R.N, BEATRICE TEEL, R.N., OFFICER DIMLER, KINTOCK,** and **JOHN DOES 4-10** and **ABC ENTITIES 1-10** in violating the civil rights of plaintiff's decedent protected by and secured under the provisions of the First, Fourth, Sixth, Eighth, Ninth and Fourteenth amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1985 (2) *et. seq.*

45.     At all relevant times herein, the **SUPERVISOR DEFENDANTS,** defendants **JANE BYRD, L.P.N.** in her personal, individual and official capacities, **ERIN MARUSKY, R.N,** in her personal, individual and official capacities, **BEATRICE TEEL, R.N.,** in her personal, individual and official capacities, **OFFICER DIMLER,** in his personal, individual and official capacities, **KINTOCK, JOHN DOES 4-10** in their personal, individual and official capacities, and **ABC ENTITIES 1-10** were acting under color of state law and within the scope of their authority as agents, servants and employees of said defendants.

46.     Plaintiffs also institute this action pursuant to the laws of the State of New Jersey for damages arising by reason of wrongful death, pain and suffering, hedonistic damages, negligence, infliction of mental distress, the failure to properly hire, train and supervise staff, employees, agents and servants, abuse of authority, failure to provide adequate medical care and treatment, malpractice and negligence.

47.     Plaintiffs were permitted to file a late Notice of Claim by Order of the Hon. Sue Regan dated February 10, 2010, which were served accordingly pursuant to New Jersey Statutes Title 59:8-4 and signed by plaintiff's representative, Shelley L. Stangler, Esq. upon the public entities employing the **SUPERVISOR DEFENDANTS, KINTOCK, JOHN DOES 4-10** and **ABC ENTITIES 1-10.**

48.     More than six (6) months have elapsed since service of plaintiff's Notices of Claims and the claims remain unresolved.

49.     This action was commenced within two (2) years from the date of the death, January 17, 2009.

## FIRST COUNT

50.     Plaintiffs repeat each and every allegation contained in paragraphs one (1) through forty-nine (49) as if set forth fully herein at length.

51.     At all relevant times herein, the **SUPERVISOR DEFENDANTS,** defendants **JANE BYRD, L.P.N.,** acting in her personal, individual and official capacities, **ERIN MARUSKY, R.N,** acting in her personal, individual and official capacities, **BEATRICE TEEL, R.N.,** acting in her personal, individual and official capacities, **OFFICER DIMLER,** acting in his personal, individual and official capacities, **KINTOCK, JOHN DOES 4-10,** through their agents, servants and employees and acting in their personal, individual and official capacities, and **ABC ENTITIES 1-10,** were acting under color of law under the state and federal Constitutions, statutes, laws, charters, ordinances, rules, regulations, customs, usages and practices of the subject governmental departments, agencies and entities and within the scope of their authority as employees and/or officers of the State of New Jersey, the DOC, South Woods State Prison and/or C.R.A.F.

52.    During all relevant times herein the aforementioned defendants acted jointly and in concert with each other, and conspired and agreed between and amongst themselves to commit the unlawful violation of civil rights upon plaintiff's decedent **ROBERT MULLIN** (hereinafter "**MULLIN**") as well as to fail to provide proper medical care to **MULLIN**.

53.    In particular, defendants agreed and conspired not to provide sufficient and adequate medical care to **MULLIN**, not to provide sufficient and adequate supervision, to violate protocols and policies designed to stop and avoid suicide by those persons, such as plaintiff's decedent, under the control and custody of the defendants, to fail to monitor and supervise **MULLIN**, to fail to intervene or protect **MULLIN** from danger and imminent physical harm, and to allow **MULLIN** to have the ability to commit suicide.

54.    During all relevant times herein the **SUPERVISOR DEFENDANTS**, defendants **JANE BYRD, L.P.N.** acting in her personal, individual and official capacities, **ERIN MARUSKY, R.N**, acting in her personal, individual and official capacities, **BEATRICE TEEL, R.N.**, acting in her personal, individual and official capacities, **OFFICER DIMLER**, acting in his personal, individual and official capacities, **KINTOCK, JOHN DOES 4-10**, acting in their personal, individual and official capacities, and **ABC ENTITIES 1-10**, by and through their agents, servants, and employees acted with deliberate and conscious indifference to **MULLIN'S** constitutional rights which violations arose out of a pattern or custom or policy and practice by each of the defendants, in permitting and allowing **MULLIN** to be unsupervised, alone, and with the wherewithal to do harm to himself, in failing to provide medical attention, in failing to enact, implement, promulgate and enforce policies, procedures and standards with respect to suicide watch and avoidance, inadequate recordkeeping, in failing to intervene, in exposing plaintiff's decedent to imminent bodily harm, which was foreseeable under the circumstances, in allowing

13

unsafe conditions to exist in the defendant correctional facilities, infirmaries and hospital, in failing to properly hire, train and supervise their employees in the proper conduct of their duties, among other acts and omissions.

55.    In particular, there are no known records of any investigation or internal affair reports made in connection with the death of **MULLIN**.

56.    At all relevant times herein the defendants, individually and collectively, through their agents, servants and employees were acting within the scope of their employment and duties at the time of the subject events as well as in their personal, individual and official capacities.

57.    At all relevant times herein the defendants, individually and collectively, through their agents, servants and employees, and acting in their personal, individual and official capacities, by reason of their acts, omissions, deliberate and conscious indifference to the rights of **MULLIN**, and by a pattern of abuse and violation of procedure and protocol, and failure to provide medical treatment inclusive of mental health services, and by their failure to provide **MULLIN** with a safe environment and by putting him in a position to harm himself, deprived **MULLIN** of his rights, privileges and immunities secured by the Constitution and laws of the United States, and are liable to the plaintiffs pursuant to Title 42 Sections 1983 and 1985 of the United States Code and the New Jersey Civil Rights Statute Title 10 and under state common law.

58.    The defendants, their agents, servants and employees allowed, condoned and permitted the circumstances under which suicide and harm could occur, and with deliberate indifference failed to prevent it, failed to intervene, failed to provide proper medical care and

services, and subjected **MULLIN** to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

59.    The defendants, their agents, servants and employees deprived **MULLIN** of his rights, privileges and immunities secured by the Constitution and laws of the United States including violation of his Fourteenth Amendment rights of due process, equal protection, his First Amendment rights, his Fourth Amendment rights and his rights of privacy, as well as his Fifth and Sixth Amendment rights.

60.    At all relevant times herein the aforedescribed acts were committed under color of law within the authority of the agents, servants and employees of the defendants.

61.    The defendants, individually and collectively acted pursuant to official policy and/or custom and to deprive plaintiff's decedent of his constitutional rights under 42 U.S. Code sections 1983 and 1985.

62.    By reason of the foregoing, defendants violated the civil rights of plaintiff's decedent.

63.    By reason of the foregoing, and as a direct and proximate result of defendants' constitutional violations, plaintiff's decedent **MULLIN** sustained serious and severe injuries which resulted in his death.

64.    The decedent left him surviving his mother, **JOAN MULLIN,** and other next of kin.

65.    As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff's decedent **MULLIN** was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

66.     As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff **JOAN MULLIN** has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

67.     By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has been damaged.

68.     By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff **JOAN MULLIN** has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

69.     By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

70.     **WHEREFORE**, plaintiffs **JOAN MULLIN, as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR., and JOAN MULLIN individually**, demands judgment against defendants, **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, DIRECTOR MARIE DUNLAP-PRYCE, CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC, JANE BYRD, L.P.N., ERIN MARUSKY, R.N., BEATRICE TEEL, R.N., OFFICER DIMLER, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 4-10 and ABC ENTITIES 1-10** jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

## SECOND COUNT

71.     Plaintiffs repeat and reallege each and every allegation contained in paragraph one (1) through seventy (70) of the complaint as if set forth fully herein at length.

72.     Defendants, individually and collectively, through their agents, servants and employees acted pursuant to official policy and/or custom to deprive plaintiff's decedent of his constitutional rights under Title 10 of the New Jersey statutes, known as the New Jersey Civil Rights Act., N.J.S.A. 10:6-1 *et seq*. Specifically, by their actions, defendants deprived plaintiff's decedent of his right to be free from cruel or unusual punishment as provided by the New Jersey Constitution, Article 12 and his right to due process as provided by the New Jersey Constitution, Article 1.

73.     By reason of the foregoing, and as a direct and proximate result of defendants' constitutional violations, plaintiff's decedent **MULLIN** sustained serious and severe injuries which resulted in his death.

74.     The decedent left his surviving mother, **JOAN MULLIN**, and other next of kin.

75.     As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff's decedent **MULLIN** was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

76.     As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff **JOAN MULLIN** has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

77.     By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has been damaged.

78.     By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff **JOAN MULLIN** has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

79.   By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

80.   WHEREFORE, plaintiffs JOAN MULLIN, as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR.,  and JOAN MULLIN individually, demands judgment against defendants, ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, DIRECTOR MARIE DUNLAP-PRYCE, CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC, JANE BYRD, L.P.N., ERIN MARUSKY, R.N., BEATRICE TEEL, R.N., OFFICER DIMLER, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 4-10 and ABC ENTITIES 1-10 jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

### THIRD COUNT

81.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs one (1) through eighty (80) of the Complaint as if set forth fully herein at length.

82.   At all relevant times herein defendants were under a duty to act reasonably in the performance of their duties as corrections officers, staff, medical providers and supervisors in the control, maintenance, operation, handling and management of the jail and correctional facilities and/or in the hospital,  in the provision of medical care and treatment,  in properly supervising and monitoring plaintiff's decedent, in following and promulgating appropriate policies and procedures with respect to those who are likely to harm themselves, including the commission of suicide, and to prevent such harm from occurring, and to intervene to avoid and prevent such harm from occurring, and in providing proper training to those with the responsibility for the care and management of those under custodial or hospital care.

83.    At all relevant times herein defendants were under a duty to act reasonably in following and maintaining proper protocol, policy, procedures, rules and guidelines enacted and propounded with respect to their duties and the care and management of plaintiff's decedent and others similarly situated.

84.    Defendants, individually and collectively were negligent and careless in their failure to properly hire, retain, train and supervise officers, staff, employees, agents, servants and medical providers with respect to the evaluation, classification, care and management of plaintiff's decedent, in their failure to properly implement, enact, enforce, follow and maintain proper protocol, policy, procedures, rules and guidelines; in their failure to intervene to prevent the suicide, in their failure to prevent the suicide, in their failure to manage and operate their facilities in a reasonable manner so as to prevent the occurrence, and were negligent and careless in the failure to provide adequate medical attention and treatment, among other acts of negligence and omissions.

85.    Defendants, individually and collectively were negligent and careless in failing to properly discipline their staff, employees, agents and servants despite knowledge of their failure to take proper action to avoid the subject occurrence and similar occurrences and to prevent those in plaintiff's decedent's position from harming themselves.

86.    The personal injuries, death and damages suffered by plaintiff's decedent were caused solely as a result of the negligence and carelessness of the defendants, individually and collectively.

87.    By reason of the foregoing, and as a direct and proximate result of defendants' negligence as aforedescribed, plaintiff's decedent **MULLIN** sustained serious and severe injuries which resulted in his death.

88.   The decedent left his surviving mother, **JOAN MULLIN**, and other next of kin.

89.   As a direct and proximate result of the negligence as aforedescribed, plaintiff's decedent **MULLIN** was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

90.   As a direct and proximate result of the negligence as aforedescribed, plaintiff **JOAN MULLIN** has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

91.   By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has been damaged.

92.   By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff **JOAN MULLIN** has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

93.   By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

94.   **BEFORE**, plaintiffs **JOAN MULLIN, as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR.,** and **JOAN MULLIN individually,** demands judgment against defendants, **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, DIRECTOR MARIE DUNLAP-PRYCE, CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC, JANE BYRD, L.P.N., ERIN MARUSKY, R.N., BEATRICE TEEL, R.N., OFFICER DIMLER, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 4-10** and **ABC ENTITIES 1-10** jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

### FOURTH COUNT

95.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs one (1) through ninety-four (94) of the Complaint as if set forth fully herein at length.

96.     During the period he remained in their custody and care, the defendants individually and collectively, through their agents, servants and employees, engaged in actions intended to inflict severe emotional trauma upon plaintiff's decedent **MULLIN.**

97.     By reason of the deliberate indifference and reckless disregard for the rights of **MULLIN,** and of the deprivation of constitutional rights as aforedescribed, including the intentional failure to follow policies and procedures, the failure to provide adequate medical care and treatment, the failure to supervise and monitor, the failure to train, **MULLIN** was subjected to intentional infliction of emotional distress.

98.     The emotional distress was severe and outrageous.

99.     The emotional distress was of such character that no reasonable person could be expected to endure it.

100.    In particular, the emotional distress aggravated and exacerbated decedent **MULLIN'S** previously diagnosed psychiatric conditions which increased the likelihood and foreseeability of self-inflicted harm, including suicide.

101.    In addition or in the alternative, plaintiff's decedent suffered emotional harm due to the negligence and carelessness of the defendants.

102.    By reason of the aforesaid intentional and negligent infliction of mental distress, plaintiff's decedent **MULLIN** was caused to suffer pain, suffering, humiliation, embarrassment and anguish, all to his damage.

21

103. By reason of the foregoing infliction of mental distress, both intentional and negligent, plaintiff's decedent **MULLIN** has been damaged.

104. The decedent left his surviving mother, **JOAN MULLIN**, and other next of kin.

105. As a direct and proximate result of the negligence as aforedescribed, plaintiff's decedent **MULLIN** was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

106. As a direct and proximate result of the negligence as aforedescribed, plaintiff **JOAN MULLIN** has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

107. By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has been damaged.

108. By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

109. By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

110. **WHEREFORE**, plaintiffs **JOAN MULLIN**, as **Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR.**, and **JOAN MULLIN** individually, demands judgment against defendants, **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, DIRECTOR MARIE DUNLAP-PRYCE, CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC, JANE BYRD, L.P.N., ERIN MARUSKY, R.N., BEATRICE TEEL, R.N., OFFICER DIMLER, KINTOCK**

GROUP, MERCER COUNTY, JOHN DOES 4-10 and ABC ENTITIES 1-10 jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

<u>**FIFTH COUNT**</u>

111.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs one (1) through one hundred ten (110) as if set forth herein fully at length.

112.   The **SUPERVISOR DEFENDANTS'** and **KINTOCK's** unlawful acts constitute abuse of process.

113.   By reason of the foregoing, and as a direct and proximate result of defendants' abuse of process, plaintiff's decedent **MULLIN** sustained serious and severe injuries which resulted in his death.

114.   The decedent left his surviving mother, **JOAN MULLIN**, and other next of kin.

115.   As a direct and proximate result of the abuse of process, plaintiff's decedent **MULLIN** was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

116.   As a direct and proximate result of the abuse of process as aforedescribed, plaintiff **JOAN MULLIN** has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

117.   By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has been damaged.

118. By reason of the foregoing abuse of process and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

119. By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

120. **WHEREFORE**, plaintiffs **JOAN MULLIN, as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR.,** and **JOAN MULLIN** individually, demands judgment against defendants, **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, DIRECTOR MARIE DUNLAP-PRYCE, CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC, JANE BYRD, L.P.N., ERIN MARUSKY, R.N., BEATRICE TEEL, R.N., OFFICER DIMLER, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 4-10** and **ABC ENTITIES 1-10** jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

<u>SIXTH COUNT</u>

121. Plaintiffs repeat and reallege each and every allegation contained in paragraphs one (1) through one-hundred twenty (120) of the Complaint as if set forth fully herein at length.

122. At all relevant times herein defendants, individually and collectively, undertook to diagnose and treat any medical conditions suffered by plaintiff's decedent, including mental health, emotional, psychological and psychiatric care and treatment, and were under a duty to do so.

123. At all relevant times herein defendants, individually and collectively, undertook to diagnose and treat plaintiff's decedent **MULLIN.**

124.    At all relevant times herein defendants, individually and collectively, and in particular defendants **JANE BYRD, L.P.N., ERIN MARUSKY, R.N., BEATRICE TEEL, R.N., and CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE,** held themselves out to plaintiff's decedent as facilities/persons able to and furnishing medical treatment and medical care.

125.    At all relevant times herein defendants individually and collectively, and in particular defendants **JANE BYRD, L.P.N., ERIN MARUSKY, R.N., BEATRICE TEEL, R.N. and CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC** owed a duty to the plaintiff's decedent and to others likewise situated to use reasonably prudent and non-negligent medical care.

126.    Between January 15, 2009 and January 17, 2009 plaintiff's decedent came under the care of the medical staff, infirmary, agents, servants and employees and/or contractors of the defendants.

127.    At all relevant times herein defendants held themselves out as maintaining adequate and competent agents, servants and employees and further warranted and represented that their agents, servants and/or employees were qualified and trained to provide proper medical care and treatment as required and further warranted and represented themselves as being equipped in sufficient manner to render such proper care and treatment, including care and treatment involving mental health, emotional stability, psychological and psychiatric care.

128.    The defendants, individually and collectively failed to exercise reasonable and ordinary care in the treatment of plaintiff's decedent, failed to exercise that degree of care to be exercised by a hospital and medical staff in similar circumstances and were negligent and careless in the care and treatment of plaintiff's decedent **MULLIN.**

129.     The defendants, individually and collectively failed to exercise reasonable and ordinary care in the treatment of **MULLIN**, failed to exercise that degree of care to be expected by a hospital, nurses, and medical providers in correctional facilities in similar circumstances and were negligent and careless in the care and treatment of **MULLIN**.

130.     The defendants, individually and collectively,  their agents, servants, employees and contractors were negligent and careless in failing to hire, train and supervise adequate staff, in failing to recognize various signs symptoms, indications and manifestations of medical and psychological problems in **MULLIN**, in failing to maintain adequate and proper protocols and standards for the handling of persons in the condition of **MULLIN**, in failing to maintain proper record keeping protocol;  in failing to properly diagnosis **MULLIN'S** condition and failing to provide adequate care, failing to appreciate the likelihood that **MULLIN** could or would inflict harm to himself, failed to provide proper counselling and guidance, failing to properly evaluate his mental state so as to avoid the occurrence, and in otherwise failing and omitting to maintain that degree of care and treatment for sick patients that a prudent hospital and prudent doctors, interns, nurses, attendant and other medical providers would have maintained under like circumstances and like conditions.

131.     By reason of the aforesaid medical and nursing malpractice, plaintiff's decedent was caused to suffer severe, painful and permanent personal injuries, sustained severe nervous shock, mental anguish and great physical pain, was prevented from engaging in his usual activities and committed suicide.

132.     By reason of the foregoing, and as a direct and proximate result of defendants' medical negligence as aforedescribed, plaintiff's decedent **MULLIN** sustained serious and severe injuries which resulted in his death.

26

133.   The decedent left his surviving mother, **JOAN MULLIN**, and other next of kin.

134.   As a direct and proximate result of the medical negligence as aforedescribed, plaintiff's decedent **MULLIN** was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

135.   As a direct and proximate result of the medical negligence as aforedescribed, plaintiff **JOAN MULLIN** has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

136.   By reason of the foregoing medical negligence and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has been damaged.

137.   By reason of the foregoing medical negligence and wrongful death of plaintiff's decedent plaintiff **JOAN MULLIN** has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

138.   By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

140.   **WHEREFORE**, plaintiffs **JOAN MULLIN**, as **Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR.**, and **JOAN MULLIN** individually, demands judgment against defendants, **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, DIRECTOR MARIE DUNLAP-PRYCE, CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC, JANE BYRD, L.P.N., ERIN MARUSKY, R.N., BEATRICE TEEL, R.N., OFFICER DIMLER, KINTOCK GROUP, MERCER COUNTY, JOHN DOES 4-10 and ABC ENTITIES 1-10** jointly and

severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

> SHELLEY L. STANGLER, P.C.
> **Attorney for Plaintiffs**

Dated: _____, 2011          BY: _____

> SHELLEY L. STANGLER, ESQ.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury of all issues so triable.

Dated: _____, 2011          BY: _____

> SHELLEY L. STANGLER, ESQ.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:24-4, **SHELLEY L. STANGLER, ESQ.** is hereby designated as trial counsel on behalf of the plaintiff in the within matter.

Dated: _____, 2011          BY: _____

> SHELLEY L. STANGLER, ESQ.

## CERTIFICATION

SHELLEY L. STANGLER, ESQ., of full age, certifies:

1.     SHELLEY L. STANGLER, P.C. has been retained to represent plaintiffs, **JOAN MULLIN, as Administratrix of the Estate of ROBERT MULLIN, JR, and JOAN MULLIN** individually in connection with the within matter.  I am the attorney in charge of the case.

2.     The matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no other action or arbitration proceeding is contemplated by plaintiff.

3.     There are no other parties who should be joined in this action.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

SHELLEY L. STANGLER

DATED: June 20, 2011