NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOAN MULLIN, ADMINISTRATRIX OF THE ESTATE OF ROBERT MULLIN, deceased, and JOAN MULLIN, individually,<br><br>  Plaintiffs,<br><br>v.<br><br>ADMINISTRATOR KAREN BALICKI, et al.,<br><br>  Defendants. | CIVIL ACTION NO. 11-247 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

Joan Mullin, individually and as administratrix of the estate of Robert Mullin, her son, ("Plaintiffs") seeks reconsideration of this Court's Order dated November 1, 2013 (dkt. entry no. 185, Notice of Mot. for Reconsideration) in which the Court granted in part and denied in part the defendants' motion to dismiss and motion for judgment on the pleadings (collectively "motions to dismiss"). (See dkt. entry no. 154, 11-1-13 Order.) For the reasons that follow, that motion for reconsideration is denied.

**I.  BACKGROUND**

The Court, for the purposes of judicial economy, will not repeat the facts, procedural history, and reasoning of the Court's November 1, 2013 Opinion ("Opinion") and Order ("Order") and instead incorporates them by reference. (See dkt. entry no. 153, 11-1-13 Op.; 11-1-13 Order.) Following the Opinion and Order, on November 13, 2013, Plaintiffs filed a

motion for reconsideration and to amend the Second Amended Complaint. (See dkt. entry no. 155, 11-13-13 Notice of Mot.) Because the motion for leave to amend should have been "pursued in a separate motion before the Magistrate Judge," this Court denied the motion without prejudice on November 15, 2013. (Dkt. entry no. 158, 11-15-13 Order at 2.) This Court granted Plaintiffs leave to refile the motion for reconsideration before this Court and to file a separate motion for leave to amend before the Magistrate Judge "**AFTER THE SEPARATELY-FILED MOTION FOR RECONSIDERATION HAS BEEN RESOLVED**." (Id. at 3.) Plaintiffs then filed a motion for reconsideration of the Opinion and Order on November 25, 2013. (See dkt. entry no. 160, 11-25-13 Notice of Mot.) On March 4, 2014, after briefing on the motion for reconsideration was complete, Plaintiffs' counsel filed a letter to this Court seeking to reopen the motion on the basis of "additional evidence" that Plaintiffs' counsel had in her possession since before the Court issued its Opinion and Order but that she had misplaced. (Dkt. entry no. 182, 3-4-14 Pls.' Counsel Letter at 2.) On March 31, 2014, this Court denied the motion for reconsideration without prejudice and permitted Plaintiffs to refile the motion presenting the new evidence. (Dkt. entry no. 184, 3-31-14.) On April 24, 2014, Plaintiffs filed the instant motion for reconsideration. (See Not. of Mot. for Reconsideration.)

Plaintiffs seek reconsideration as to two aspects of the Opinion and Order: (1) the dismissal of all of the claims against Officer Dimler ("Dimler"); and (2) the dismissal of the claims under the New Jersey Tort Claims Act against Nurse Byrd ("Byrd"). (See dkt. entry no. 186, Pls.' Br. in Supp. of Mot. ("Pls.' Br.") at 1.) The purported basis of the motion is

"new facts which were not before the Court and unknown to plaintiff at the time the motions were filed and opposition briefed." (Id.) There appear to be two sets of information that came to Plaintiffs' attention following the briefing of the motions to dismiss. According to Plaintiffs' counsel, "[o]n July 17, 2013 the State Defendants supplied the policies and procedures, among other documents, which finally established that Dimler and Byrd were in violation of various policies and failed to properly perform their ministerial functions." (Id. at 8.) Additionally, Plaintiffs' counsel claims that she had received discs of discovery information from the defendants in April 2013, but that she "misplaced and misfiled" one of the discs. (Id.) The information on this disc apparently related to "the investigation into the suicide," and the misplaced disc was not discovered until after February 26, 2014. (See id.; 3-4-14 Pls.' Counsel Letter at 2.) On the basis of this new information, Plaintiffs intend to seek to amend the Second Amended Complaint and add new allegations in a Third Amended Complaint, which Plaintiffs submitted as an exhibit to this motion. (See Pls.' Br. at 2; dkt. entry no. 187, Proposed Third Am. Compl.)

The new allegations that arise from these new sources of information relate to specific policies of the Department of Corrections that impose various obligations on Byrd and Dimler that they allegedly failed to follow. (See Pls.' Br. at 2-3.) According to Plaintiffs, Byrd was required to, inter alia, ensure that Robert Mullin ("Mullin"), the decedent, was "seen by a mental health professional prior to his placement in detention and that he be placed on Close or Constant Watch" based on the fact that Byrd "obtain[ed] a positive response to a mental health item in that [Mullin] answered in the affirmative when asked if he had ever tried to

3

commit suicide and whether he had ever been treated for a psychiatric disorder." (Id. at 3.) Byrd also allegedly "failed to utilize the proper assessment mechanisms in place by policy, failed to see to it that decedent was evaluated by a psychologist or psychiatrist upon transfer, failed to document the type of watch necessary, all a direct and proximate cause of decedent's death." (Id. at 5.) With respect to Dimler, Plaintiffs allege that Mullin was transferred to a Close Custody Unit, which was "for inmates placed on either Administrative or Disciplinary Segregation, Protective Custody or Suicide watch," and that internal procedures require that inmates in Close Custody be monitored either every fifteen minutes ("Close Watch") or continuously ("Constant Observation") depending on the inmate. (See id. at 3-4.) Plaintiffs claim that the internal procedures required that Mullin be placed on Constant Observation. (Id. at 4.) Dimler purportedly failed to monitor Mullin "either on Constant Watch or Close Watch." (Id. at 5.) Essentially, Plaintiffs' contention is that Dimler was on notice regarding Mullin's vulnerability to suicide by virtue of his placement in the Close Custody Unit and that because of this placement, Dimler was required by internal policy and procedure to monitor Mullin more frequently than was done. (See id. at 5-6.)

Plaintiffs also wish to assert claims against new defendants. (Id. at 1.) Seemingly, this would include "Officer Russo." Plaintiffs allege, based on the statements of other inmates, that "Mullin requested to see a psychiatrist, and told Officer Russo that he wanted to kill himself, but was ignored and humiliated by Officer Russo." (Id. at 5.) Officer Russo purportedly refused Mullin's requests and said "Shut up. You might as well kill yourself."

4

(Id. at 5-6.)  Plaintiffs do not identify the source of this information or why that was not available earlier, but the Court assumes that this information came from the misplaced disc.

## II.  STANDARD OF REVIEW

Plaintiffs have moved for reconsideration pursuant to Local Civil Rule 7.1 ("Rule 7.1").  Reconsideration is considered "an extraordinary remedy" that should granted "sparingly."  Daminao v. Sony Music Entm't, Inc., 975 F.Supp. 623, 634 (D.N.J. 1997) (quoting N.L. Indus., Inc. v. Commercial Union Ins. Co., 935 F.Supp. 513, 516 (D.N.J. 1996)).  Pursuant to Rule 7.1(i), "a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion," and "[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion."  "The word 'overlooked' is the operative term in the Rule."  Bowers v. Nat'l Collegiate Athletic Ass'n, 130 F.Supp.2d 610, 613 (D.N.J. 2001).  To succeed on such a motion, Plaintiffs "must show more than a disagreement with the court's decision."  Daminao, 975 F.Supp. at 634 (quoting Panna v. Firstrust Sav. Bank, 760 F.Supp. 432, 435 (D.N.J. 1991)).  And, in general, Rule 7.1 "does not contemplate a Court looking to matters which were not originally presented."  Id. (quoting Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F.Supp. 159, 162 (D.N.J. 1988)).

"Reconsideration motions . . . may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  N.L. Indus., Inc., 935 F.Supp. at 516.  Reconsideration motions should only be granted

"where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent manifest injustice arises." Id. (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

Plaintiffs here rely upon the second ground for reconsideration, "new evidence." Notably, "[n]ew evidence is not the equivalent of evidence that a party simply obtains after an adverse ruling." Physicians Healthsource, Inc. v. Janssen Pharm., Inc., No. 12-2132, 2013 WL 2460345, at *3 (D.N.J. June 6, 2013) (citing Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 252 (3d Cir. 2010)). Motions for reconsideration are not a means to expand the record before the court. Bowers, 130 F.Supp.2d at 613. Generally speaking, "courts should reject new evidence not presented when the court made its original decision." Physicians Healthsource, Inc., 2013 WL 2460345, at *3. Following a decision on a motion to dismiss, courts in this district have denied motions for reconsideration where new allegations are offered under the guise of "new evidence." See, e.g., id.

### III. DISCUSSION AND ANALYSIS

Plaintiffs argue that this Court, in rendering the Opinion and Order, improperly parsed "the factual allegations in determining whether plaintiff could prove the lack of supervision or the failure to abide by policy and procedure in the supervision and management of [Mullin]" and that this "was an exceptionally harsh and restrictive view of the pleading standards which plaintiff contends does not comport with the law." (Dkt. entry no. 201, Pls.' Reply Br. at 18-

6

19.) The Court disagrees with this assessment, particularly given the nature of Plaintiffs' claims and the potential immunities at play. In the Opinion, the Court explained:

> A civil-rights complaint must "'contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs.'" Freedman v. City of Allentown, 853 F.2d 1111, 1114 (3d Cir. 1988) (quoting Ross v. Meagan, 638 F.2d 646, 650 (3d Cir. 1981)). The court must look past any conclusory allegations regarding the willfulness of the defendants' conduct or the defendants' reckless disregard of the rights of the victim; the court will focus on "the factual scenario itself to examine whether the conduct alleged, viewed most favorably to plaintiffs, is reasonably susceptible to falling within the conclusions alleged." Id. at 1115.

(11-1-13 Op. at 10-11.) And, with respect to the state-law immunities under New Jersey's Tort Claims Act, the Court stated, "Courts interpret these provisions broadly, and close calls in application are resolved in favor of immunity, not liability." (Id. at 15.) Given the type of claims at issue and the highly conclusory language used in the Second Amended Complaint, the Court does not agree with Plaintiffs' charge that the Opinion was "exceptionally harsh" or "restrictive."

Plaintiffs further contend that the Second Amended Complaint is not "conclusory." Specifically, they assert that their "newly discovered evidence . . . supports the already pled allegations before the Court and would tend to show that the Court did overlook the allegations" relating to Dimler and Byrd. (Pls.' Reply Br. at 10.) According to Plaintiffs, "discovery has established that in fact these allegations were not conclusory." (Id. at 26.) The Court believes that Plaintiffs are confused by the nature and significance of a determination that the pleadings were "conclusory." The Court's characterization of the pleadings as "conclusory" means that the words chosen by Plaintiffs were insufficiently specific to provide

7

the requisite notice to the defendants. Whether discovery could ultimately prove or even support the allegations does not alter their conclusory nature in the first instance, and it is the words chosen, and not the potentially available proof, that the Court considers on a motion to dismiss. Therefore, the "new evidence" submitted by Plaintiffs does not change the Court's determination that some of the language used by Plaintiffs in the Second Amended Complaint was "conclusory."

The purported new evidence before the Court is (1) the policies and procedures that Dimler and Byrd allegedly failed to follow and (2) information relating to the knowledge of Dimler and other yet-unnamed defendants regarding Mullin's vulnerability to suicide. Plaintiffs first argue that the Court erred in concluding that Dimler and Byrd were entitled to immunity on the state-law claims pursuant to N.J.S.A. 59:6-6, which confers immunity on public employees for injuries resulting from their determination "whether to confine a person for mental illness or drug dependence [or] the terms and conditions of confinement for mental illness or drug dependence." (Pls.' Br. at 11.) Plaintiffs contend that this immunity is reserved for "high level judgment or policy decisions" and does not apply to Dimler or Byrd in the handling of their ministerial duties. (See id. at 12-13 (citing N.J.S.A. 59:3-2; Kolitch v. Lindedahl, 100 N.J. 485 (1985); Longo v. Santoro, 195 N.J. Super. 507 (N.J. App. Div. 1984)); see also Pls.' Reply Br. at 24.) Additionally, Plaintiffs argue that the dismissal of the constitutional claims against Dimler should be vacated because "new evidence and proposed amended factual allegations" demonstrate Dimler's actual knowledge of Mullin's vulnerability to suicide. (Pls.' Br. at 15.) The gist of Plaintiffs' new evidence of this

8

knowledge is that Mullin was transferred to a Close Custody Unit, and policy required supervision of inmates in this unit at a minimum of fifteen minute intervals. The fact that Mullin was in this unit, and Dimler was aware of his existence in this unit, indicates — according to Plaintiffs — that Dimler was on notice that Mullin required close supervision. (Id. at 16-17.)

The defendants respond that reconsideration is not warranted and is improper because Plaintiffs' motion is based not upon the "legal sufficiency" of the Second Amended Complaint but rather upon "allegations as set forth in an entirely new and unfiled Complaint." (Dkt. entry no. 189, Byrd's Opp'n at 14; see also dkt. entry no. 196, Attorney General's Opp'n at 10 ("The court's Order and Opinion addressed solely whether certain claims in the Second Amended Complaint should be dismissed for failure to state a claim, and these new documents in no way did or would possibly have touched on that analysis.").)

The Court concludes that this "new evidence" does not warrant reconsideration of the Court's Opinion and Order. The Second Amended Complaint, as written, remains conclusory and insufficiently specific with respect both to Dimler's knowledge and to the alleged policies and procedures that conveyed "ministerial" duties on Byrd and Dimler, which they allegedly failed to follow. (See dkt. entry no. 102, 2d Am. Compl.) This new evidence, which provides many missing details relating to Plaintiffs' allegations relating to policy and procedure and Dimler's knowledge, is external to the Second Amended Complaint. In evaluating a motion to dismiss, the Court typically does not look outside of the complaint. See Borough of Moosic v. Darwin Nat'l Assur. Co., 556 Fed.Appx. 92, 95 (3d Cir. 2014)

9

("Generally, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); A.D. Bedell Wholesale Co. v. Phillip Morris Inc., 263 F.3d 239, 266 (3d Cir. 2001) ("It is black-letter law that [a] motion to dismiss for failure to state a claim . . . is to be evaluated only on the pleadings." (internal quotation marks and citation omitted)). Thus, the Court properly relied upon the allegations in the Second Amended Complaint. Plaintiffs have merely come forward with new allegations and have not demonstrated that the Court "overlooked" anything in the first instance. See Physicians Healthsource, Inc., 2013 WL 2460345, at *3 ("Plaintiff is seeking to assert new allegations . . . . In that regard, under the standard, Plaintiff has not raised any basis for which I would reconsider my prior rulings."). For this reason, reconsideration is not warranted.

      What Plaintiffs truly seek to do is to amend the Second Amended Complaint. At this stage in the litigation, Plaintiffs must move for leave before the Magistrate Judge and may not amend as of right pursuant to Federal Rule of Civil Procedure 15(a). The decision whether to grant leave to amend is discretionary. See Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993). Leave to amend should be "freely given" unless there is a justification for denying such leave, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id. at 1413-14 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

      The Court does not purport to opine on whether the Magistrate Judge should exercise the discretion to grant leave to amend in these circumstances other than to make note of a few

considerations.[1]  With respect to the "new evidence" relating to policies and procedures, the parties do not dispute that this information was in fact at Plaintiffs' counsel's "disposal" as of July 17, 2013, after the briefing on the motions to dismiss was completed but before the Court rendered a decision.  (See Pls.' Br. at 8.)  The Court issued its Opinion and Order on November 1, 2013.  Plaintiffs have offered absolutely no explanation why they did not bring this information to the Court's attention or attempt to amend the Second Amended Complaint prior to that date, over four months after Plaintiffs' counsel was aware of the information, which counsel describes as "critical."  (Pls.' Reply Br. at 8.)[2]  With respect to the new evidence relating to the investigation into Mullin's suicide, Plaintiffs' counsel misplaced or misfiled the disc containing this information but located it after February 26, 2014 — nearly four months after the Court rendered its decision.  Plaintiffs' counsel promptly notified the Court about this discovery on March 4, 2014.  (See 3-4-14 Pls.' Counsel Letter.)

   The foregoing demonstrates that two sets of new information came to the Court's attention through very different circumstances.  As a result, the new allegations that Plaintiffs

---

[1] Despite the substantial briefing on the futility or sufficiency of the requested amendments or the significance of the external documents, the Court declines to consider such arguments on this motion for reconsideration of its dismissal of most of the claims in the Second Amended Complaint.  (See Attorney General's Opp'n at 11-15; Byrd's Opp'n at 11-14.)  These arguments may or may not be appropriate considerations for the Magistrate Judge, depending on the manner in which these arguments are presented.

[2] Plaintiffs argue that "Defendants have been dilatory in their discovery obligations in this case, and should not be heard to complain of the plaintiffs' clerical error or moving faster to advise the Court to reopen the Motion for Dismissal based on the July 2013 evidence."  (Pls.' Reply Br. at 8.)  The Court is unimpressed by Plaintiffs' comparison of the parties' obligations vis-à-vis one another to the parties' obligations to the Court.  Moreover, the Court invested considerable time evaluating the motions to dismiss, and Plaintiffs' counsel's disregard for the waste of judicial resources is disconcerting.

11

seek to add in a Third Amended Complaint may require different treatment depending on when that information became available to Plaintiffs' counsel. The Magistrate Judge, in applying the Foman factors, which include "undue delay," may exercise the discretion to draw a distinction between the information Plaintiffs' counsel learned of in July of 2013 as opposed to the information discovered in February or March of 2014. The Court does not intend to guide the Magistrate Judge's discretion but rather seeks to aid the Magistrate Judge by providing some direction to the parties in advance. To assist the Magistrate Judge, Plaintiffs would be wise to indicate, for each new allegation in the proposed Third Amended Complaint, where the information underlying that allegation came from and when Plaintiffs' counsel became aware of it. It is entirely unclear from the briefing which new allegations are based on the July 2013 discovery and which are based on the misplaced discovery found in February or March of 2014. The Magistrate Judge may view such distinctions as relevant, and therefore, the Court suggests that Plaintiffs clarify this on any subsequent motion for leave to amend the pleadings.

## IV.    CONCLUSION

For these reasons, Plaintiffs' motion for reconsideration (dkt. entry no. 185) is denied. The Court will issue an appropriate Order.

    s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

Date:        July 25, 2014