# EXHIBIT B
# REDACTED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOAN MULLIN, ADMINISTRATRIX OF THE
ESTATE OF ROBERT MULLIN, deceased and
JOAN MULLIN, individually,

                Plaintiffs,

v.

ADMINISTRATOR KAREN BALICKI, in her personal and individual capacities representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.), DIRECTOR ROBERT PATTERSON, in his personal and individual, representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.) DIRECTOR MARIE DUNLAP-PRYCE, in her personal and individual capacities, representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.), JANE BYRD, L.P.N., in her personal and individual capacities, ERIN MARUSKY, R.N., in her personal and individual capacities, OFFICER NICHOLAS DIMLER, in his personal and individual capacities, OFFICER ROBERT RUSSO, in his personal and individual capacities, CHIEF RALPH YANSEK, in his personal and individual capacities, Lt. DUDICH, in his personal and individual capacities, SGT. B. STERN, in his personal and individual capacities, SGT. THOMAS SPENCE, in his personal and individual capacities, OFFICER ERIC LARGE, in his personal and individual capacities, KINTOCK GROUP, JOHN DOES 4-10 (as yet unidentified and unknown governmental, county, or state officials, supervisors, agents or employees) in their personal, individual and professional capacities, ABC ENTITIES 1-10 (as yet unidentified and unknown governmental entities,

CIVIL ACTION NO. 3:11-cv-00247
(MLC -LHG)

THIRD AMENDED COMPLAINT
AND JURY DEMAND

REDACTED

| agencies, units or subdivisions, |
| Defendants. |

Plaintiffs, Joan Mullin as Administratrix of the Estate of Robert Mullin, and Joan Mullin, Individually, by way of complaint against defendants, **ADMINISTRATOR KAREN BALICKI** in her personal and individual capacities representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.); **DIRECTOR ROBERT PATTERSON** in his personal and individual capacities representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.); **DIRECTOR MARIE DUNLAP-PRYCE** in her personal and individual capacities representing the State of New Jersey, the Department of Corrections of the State of New Jersey, South Woods State Prison, and Central Reception & Assignment Facility (C.R.A.F.); **JANE BYRD, L.P.N.,** in her personal and individual capacities; **ERIN MARUSKY, R.N.** in her personal and individual capacities; **OFFICER NICHOLAS DIMLER,** in his personal and individual capacities, **OFFICER ROBERT RUSSO,** in his personal and individual capacities, **CHIEF RALPH YANSEK,** in his personal and individual capacities **LT. DUDICH,** in his personal and individual capacities, **SGT. B. STERN,** in his personal and individual capacities, **SGT. THOMAS SPENCE,** in his personal and individual capacities, **OFFICER ERIC LARGE,** in his personal and individual capacities, **KINTOCK GROUP, JOHN DOES 8-10** (as yet unidentified and unknown governmental, county, or state officials, supervisors, agents or employees) in their individual and personal capacities, and **ABC ENTITIES 1-10** (as yet unidentified and unknown governmental entities, agencies, units or subdivisions, set forth the following:

## PARTIES

1.  At all relevant times herein plaintiffs **JOAN MULLIN, Administratrix Ad Prosequendum of the Estate of ROBERT MULLIN, JR.**, and **JOAN MULLIN, individually,** were and are domiciliaries and residents of the County of Mercer and State of New Jersey.

2.  At all relevant times herein defendant **ADMINISTRATOR KAREN BALICKI** was, upon information and belief a chief supervisory official and executive of the South Woods State Prison, a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the operation and management of a certain correctional facility, with a place of business at 215 South Burlington Road, Bridgeton, NJ 08302, acting in her personal and individual capacities under color of law.

3.  At all relevant times herein defendant **DIRECTOR ROBERT PATTERSON** was, upon information and belief, the chief supervisory official and executive of the Department of Corrections for the State of New Jersey ("DOC"), a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the operation and management of correctional facilities in the State of New Jersey with a place of business at Whittlesey Road, P.O. Box 863, Trenton, NJ 0825, acting in his personal and individual capacities under color of law.

4.  At all relevant times herein **MARIE DUNLAP-PRYCE** was, upon information and belief a chief supervisory official and executive of Central Reception & Assignment Facility ("C.R.A.F."), a public entity and/or an agency or division of a public entity, organized and existing under the laws of the State of New Jersey and engaged in the operation and management

of a certain correctional facility, with a place of business at Stuyvesant Avenue, Trenton, NJ 08628-7450, acting in her personal and individual capacities under color of law.

5.      At all relevant times herein defendant **JANE BYRD, L.P.N. ("JANE BYRD," or "NURSE BYRD"**, was, upon information and belief a health care provider and employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the rendering of health care services including inmate evaluations, and acting in her personal and individual capacities under color of law.

6.      At all relevant times herein defendant **ERIN MARUSKY, R.N.**, was, upon information and belief a health care provider and employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the rendering of health care services including inmate evaluations, and acting in her personal and individual capacities under color of law.

7.      At all relevant times herein defendant **OFFICER NICHOLAS DIMLER**, was, upon information and belief a corrections officer and employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the supervision of inmates, and acting in his personal and individual capacities under color of law, and is substituted for John Doe No. 1.

8.      At all relevant times herein defendant **OFFICER ROBERT RUSSO**, was, upon information and belief a corrections officer and employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the supervision of inmates, and acting in his personal and individual capacities under color of law, and is substituted for John Doe No. 3 (former defendant Beatrice Teel, R.N. had been substituted as John Doe No. 2 but has since been dismissed from the case).

4

9. At all relevant times herein defendant **CHIEF RALPH YANSEK**, was, upon information and belief a Supervisor in the housing unit for plaintiff's decedent, and was an employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the supervision of inmates, and acting in his personal and individual capacities under color of law, and is substituted for John Doe No. 4.

10. At all relevant times herein defendant **LT. DUDICH**, was, upon information and belief a Supervisor in the housing unit for plaintiff's decedent, and was an employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the supervision of inmates, and acting in his personal and individual capacities under color of law, and is substituted for John Doe No. 5.

11. At all relevant times herein defendant **SGT. B. STERN**, was, upon information and belief a Supervisor in the housing unit for plaintiff's decedent, and was an employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the supervision of inmates, and acting in his personal and individual capacities under color of law, and is substituted for John Doe No. 6.

12. At all relevant times herein defendant **SGT. THOMAS SPENCE**, was, upon information and belief a Supervisor in the housing unit for plaintiff's decedent, and was an employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the supervision of inmates, and acting in his personal and individual capacities under color of law, and is substituted for John Doe No. 7.

13. At all relevant times herein defendant **OFFICER ERIC LARGE,** was, upon information and belief a corrections officer and employee, agent or servant of the State of New Jersey, DOC, South Woods State Prison, and/or C.R.A.F., engaged in the supervision of inmates,

and acting in his personal and individual capacities under color of law, and is substituted for John Doe No. 8.

14. At all relevant times herein defendant the **KINTOCK GROUP** was and is, upon information and belief, a private company authorized to do business in the State of New Jersey, engaged in the business of providing therapeutic and other services to those persons transitioning back from incarceration into the community, known as "halfway houses" or "work houses," with a place of business at 4 South Industrial Boulevard, Bridgeton, NJ 08302.

15. At all relevant times herein defendants **JOHN DOES 9-10** and **ABC ENTITIES 1-10** were and are as yet unidentified employees, agents, servants, contractors, supervisors, officials and/or public entities, agencies and subdivisions responsible for the operation, management and control over certain correctional facilities and custodial facilities. **JOHN DOES 8-10** are being sued in their individual and personal capacities.

## NATURE OF ACTION & FACTUAL BACKGROUND

16. Plaintiff's decedent and son, the 29 year old **ROBERT MULLIN, JR**, ("**MULLIN**") had been incarcerated and under the custodial care of individual defendants **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, MARIE DUNLAP-PRYCE** and **CHIEF EXECUTIVE OFFICER TERESA MCQUAIDE RN, APRN-BC** (hereinafter the "**SUPERVISOR DEFENDANTS**") for approximately six (6) to eight (8) years, through and including his date of death on January 17, 2009.

17. In or about May 2008 **MULLIN** was transferred to a halfway house, or "work" house under the operation and management of defendant **THE KINTOCK GROUP** (hereinafter "**KINTOCK**"), under the auspices of and by contract and agreement with the **SUPERVISOR DEFENDANTS**.

18. Plaintiff's decedent was scheduled to be released from **KINTOCK** sometime between April and June of 2009, after completing a course of therapy, work studies and services designed to allow an inmate to be rehabilitated and return to society and to his family.

19. On or about January 15, 2009, while at **KINTOCK** plaintiff's decedent exhibited deterioration in mental and psychological status, and became emotionally labile with aggressive behavior.

20. In particular, plaintiff's decedent **MULLIN** was found to be in the possession of and under the influence of controlled illegal substances including cocaine and opiates.

21. Further, **MULLIN** swallowed a handful of pills identified by the plaintiff as depression medications in front of a caseworker at Kintock, then threw the rest in a trash can.

22. **MULLIN** was thereafter transferred to South Woods State Prison, where he was found to be in possession of illegal and prohibited drugs and tested positive for cocaine and opiates.

23. **MULLIN** was medically evaluated at South Woods State Prison and thereafter based on certain documentation transferred to C.R.A.F. on January 16, 2009 under the custodial care, supervision, management and control of the **SUPERVISOR DEFENDANTS, JOHN DOES 9-10** and **ABC ENTITIES 1-10.**

24. Upon information and belief, at some point between January 15, 2009 and January 17, 2009, plaintiff also was treated by and was under the custodial care, supervision, management and control of Trenton Psychiatric Hospital and the employees and staff therein, including **JOHN DOES 9-10** and **ABC ENTITIES 1-10**.

25. Between January 15, 2009 and January 17, 2009 plaintiff's decedent was released to a single cell or area without adequate one on one and constant supervision and observation.

26. According to a Discharge and Continuity of Care Plan provided by defendant **KINTOCK**, Mullin had a history of high risk for alcohol and drugs which needed to be addressed, and was in need of additional services.

27. The file at **KINTOCK**, according to the Discharge and Continuity of Care Plan, indicated an extensive drug history involving the use of heroin, cocaine, marijuana, alcohol, prescription pills, speed/methamphetamine, acid/mushrooms and PCP.

28. The records from **KINTOCK** also show that **MULLIN** had recently been fired from his job that he held while maintaining residency at the halfway house, defendant **KINTOCK.**

29. **MULLIN** was an addict with a history of drug abuse and suicide attempts, and immediately prior to his transfer to South Woods State Prison and C.R.A.F. was found positive for highly toxic and addictive drugs.

30. **Plaintiff was identified by a Licensed Social Worker prior to transfer to the C.R.A.F. facility as a Mental Health Special Needs Inmate. (Missing Disc Discovery, CM 0289, Exhibit "K" to the Certification of counsel in support of motion for reconsideration, , April 2014, docket entries # 185 and 186)[1]. REDACTED. (CM 0391, July 2013 discovery, Exhibit "L" ).**

31. **There was an active directive in effect when MULLIN was transferred to C.R.A.F. classifying him as a Mental Health Special Needs inmate which was not changed or removed (Missing Disc Discovery, CM 0289, Exhibit "K").**

---

[1] "Missing Disc" discovery refers to the April 2013 discovery consisting of 2 discs one of which was misplaced and not printed out, and the subject of counsel's March 4, 2014, docket entry # 182, letter to Judge Cooper, Exhibit "A" to counsel's Certification in Support of this Notice of Motion to Amend.; designations "CM" or "DOC" refer to Bates number designations by the state; Exhibits referred to were those submitted with counsel certification on the motion to reconsider, docket entries # 185 and 186, hereinafter referred to only by Exhibit designation.

8

32. The Special Needs designation was noted on a transfer sheet sent from Southwood to C.R.A.F. as part of the electronic medical records. (Missing Disc, CM 0289, 0290, 0291, see also, Second Amended Complaint 'SAC.', Dkt. Entry 102, para 52.)

33. The Special Needs designation was part of the medical records and part of Mullin's file electronically maintained which was known to Nurse Byrd (Missing Disc, CM 0289, Exhibit "K").

34. NURSE BYRD, as the initial screening nurse, was required to review any transfer records and the medical records maintained on all inmates, and in particular plaintiff's decedent, but failed to do so (Missing Disc Discovery, CM 0289, July 2013 discovery, CM 0393, Exhibit "E," CM 0410, Exhibit "F," See also, SAC, at paras 52, 53, and 54.)

35. Plaintiff's decedent was required to and was placed on a Special Needs Roster available to all monitoring, housing, supervisory and medical personnel. Special procedures and policies were in place to deal with the mental health needs of Special Needs inmates, including monitoring for suicide potential, and being aware of those risks. (Missing Disc Discovery, CM 0012, 0013, showing that Mullin was entered on the Mental Health Special needs Roster on January 16, 2009; July 2013 discovery, CM 0393, Exhibit "L,", CM 0418-0419, "Exhibit "M").

36. When interviewed by the Licensed Clinical Social Worker prior to transfer to C.R.A.F., Mullin stated that he needed mental health treatment and medication, and the interview was contained in the electronically maintained records available to the staff at C.R.A.F. (Missing Disc Discovery, CM 0289, 0011, 0012, 0013, 0014, Exhibit "C" to counsel's Certification in Support of this Notice of Motion to Amend).

37. REDACTED.. (July 2013 discovery, CM 0420, 0421, Exhibit "M").

38. NURSE BYRD did obtain a positive response to a mental health item in that plaintiff answered in the affirmative when asked if he had ever tried to commit suicide and whether he had ever been treated for a psychiatric disorder (SAC, para. 50).

39. NURSE BYRD failed to provide an appropriate suicide assessment intake despite direct knowledge from the Medical Chart and plaintiff's answers to her questions that plaintiff has a history of suicide attempts, had been transferred from a halfway house under circumstances evidencing manifestation of a psychological or psychiatric disorder, and had been designated a Special Needs Inmate, REDACTED. (Missing Disc Discovery, CM 0289; 0011, 0012, 0013; Exhibit "C" to counsel's Certification in Support of this Notice of Motion to Amend; July 2013 discovery CM 0418-0421, Exhibit "M;" SAC paras. 81,82).

40. REDACTED.. (SAC, para. 51; Missing Disc Discovery CM 0272, transfer to "south 3 and placed in detention," part of Exhibit "I;" April 2013 discovery, DOC Mullin 0367, Exhibit "J;" July 2013 discovery, CM 0360, Exhibit "C," CM 0370, Exhibit "E," CM 0464, Exhibit "G," CM 0420, Exhibit "M," CM 0636, Exhibit "N." )

41. REDACTED. (April 2013 discovery, DOC Mullin 0365, 0366, Exhibit "F;" July 2013 discovery, CM 0370, Exhibit "E," CM 0464, Exhibit "G").

42. REDACTED. (July 2013 discovery, CM 0370, Exhibit "E").

43. REDACTED., CM 0370, Exhibit "E").

44. REDACTED. (July 2013 discovery, CM 0428, Exhibit "O," CM 0418, 0420-21, Exhibit "M").

45. Mullin was not monitored on either REDACTED. as mandated by policy by Dimler, Russo or Large (Missing Disc, CM 0243, statement of inmate that Dimler was only

seen at the beginning of his shift; April 2013 discovery, DOC Mullin 0365, 0366, REDACTED watch during shifts 2 and 3 up to the time of suicide, including officers Russo and Large, *See also*, SAC paras 55, Dimler failed to supervise or monitor plaintiff; SAC, para 61, Dimler failed to provide adequate protection and supervision over Mullin;" Defendants failed to enforce, follow and maintain protocol and policy, SAC para. 108).

46. REDACTED. (July 2013 discovery, CM 0425, 0428, Exhibit "O," CM 0370, Exhibit "E"; knowing that plaintiff was special needs classification, Missing Disc Discovery.)

47. REDACTED. (July 2013 discovery, CM 0372, Exhibit "E").

48. REDACTED.

49. REDACTED. (July 2013 discovery, CM 0370; 0372, Exhibit "E").

50. **NURSE BYRD** failed to refer decedent's case for a mental health evaluation, failed to utilize the proper assessment mechanisms in place by policy, failed to see to it that decedent was evaluated by a psychologist or psychiatrist upon transfer, failed to document the type of watch necessary, all a direct and proximate cause of decedent's death. (SAC para. 77, July 2013 discovery, *Id.*)

51. On January 17, 2009 at approximately 4:23 a.m. defendant **OFFICER DIMLER** found plaintiff's decedent unresponsive after hanging himself with a self-made noose made of a bed sheet. **OFFICER DIMLER** was the last person to see decedent alive, according to the Medical Examiner's Report.

52. **OFFICER DIMLER** was the individual corrections officer or staff responsible for the care, treatment, supervision and monitoring of the plaintiff's decedent, **MULLIN**, at the time of death and throughout the course of **OFFICER DIMLER'S** shift.

11

53. OFFICERS RUSSO and LARGE were the corrections officers responsible for the second shift oversight and supervision of decedent MULLIN (Missing Disc Discovery, CM 0239 *et. seq.*, Exhibit "I").

54. OFFICER DIMLER on the third shift, OFFICER RUSSO and OFFICER LARGE were the officers responsible for monitoring and supervision of MULLIN under mandated policies and procedures, and failed to monitor decedent either on REDACTED, said failure being a direct and proximate cause of decedent's death (Missing Disc Discovery, CM 0239 et seq., Exhibit "I;" April 2013 discovery, DOC 0365-66, Exhibit "F").

55. CHIEF YANSEK, LT DUDICH, SGT STERN and SGT THOMAS were supervisory and commanding officers overseeing defendants DIMLER, RUSSO and LARGE who failed to follow policy and procedure in the review of transfer and medical records, failed to check the Special Needs Roster, and failed to properly supervise OFFICERS DIMLER, RUSSO and LARGE in the performance of their mandated tasks, including the following of policy regarding monitoring of inmates, special needs, suicide watch and prevention, and recordkeeping, including proper logbook entries (Missing Disc Discovery, Exhibit "I;" July 2013 discovery).

56. CHIEF YANSEK, LT DUDICH, SGT STERN, SGT THOMAS, OFFICER DIMLER, OFFICER RUSSO and OFFICER LARGE were obligated by policy to know which inmates under their watch were designated Special Needs, and in fact had direct knowledge that Mullin was a Special Needs inmate requiring special precautions and monitoring (July 2013 discovery, CM 0464, 0471, 0393, 0419).

57. OFFICER RUSSO was also an officer responsible for monitoring and supervision over the plaintiff during the second shift (Missing Disc Discovery, Exhibit "I").

12

58. REDACTED. (Missing Disc Discovery, Exhibit "I").

59. The statements of the inmates include that REDACTED. (Missing Disc Discovery, Exhibit "I").

60. REDACTED. (Missing Disc Discovery, Exhibit "I").

61. REDACTED. (Missing Disc Discovery, Exhibit "I").

62. REDACTED. (Missing Disc Discovery, Exhibit "I").

63. REDACTED. (Missing Disc Discovery, Exhibit "I").

64. REDACTED. (Missing Disc Discovery, Exhibit "I").

65. REDACTED. (Missing Disc Discovery, Exhibit "I").

66. The Shift Commander defendants CHIEF RALPH YANSEK and LT DUDICH, well as the Supervising Officers SGTS. STERN and SPENCE, along with OFFICER RUSSO's partner, OFFICER ERIC LARGE, knew or should have known by reason of the Special Needs Roster and the pleas for assistance by Mullin that Mullin required special precautions and monitoring, that he was at risk for suicide, was going to attempt suicide and required immediate and emergent mental health and medical assistance, as well as Constant Watch monitoring (all prior exhibits, policies July 13 discovery).

67 The Shift Commanders Chief Ralph Yansek and Lt. Dudich, as well as the Supervising Officers Sgts B. Stern and Thomas Spence, along with Officer Russo's partner, Officer Eric Large, knew or should have known by reason of the Special Needs Roster and the pleas for assistance by Mullin that Mullin required special precautions and monitoring, that he was at risk for suicide, was going to attempt suicide and required immediate and

emergent mental health and medical assistance, as well as Close Watch or Constant Watch monitoring.

68. The Shift Commanders Chief Ralph Yansek and Lt. Dudich, as well as supervising officers Sgts. B. Stern and Thomas Spence failed to properly maintain order, permitted and allowed the officers under their supervision to provide lax monitoring in violation of Procedure, including but not limited to failing to conduct Close Watch or Constant Watch of Mullin, failing to document routine checks, and failing to maintain appropriate logs and handling of the inmates.

69. All of these defendants failed and refused to comply with mandated policy directives and failed and refused to provide the mental health care needed, all a direct and proximate cause of MULLIN's death (all prior exhibits, policies July 13 discovery).

70. All of these defendants were obligated by policy to provide emergency mental health treatment to MULLIN and to place him on REDACTED until properly evaluated (all prior exhibits, policies July 13 discovery).

71. All of these defendants were obligated by policy to properly document in a log book Mullin's requests for mental health assistance (July 2013 discovery, CM 0425, Exhibit "O").

72. All of these defendants knew or should have known that REDACTED. Defendants exhibited gross indifference and reckless disregard to the serious medical needs of plaintiff's decedent in failing to abide by policy and procedure, and by failing to take action despite direct or constructive knowledge of the risk for suicide of plaintiff's decedent

(July 2013 discovery, CM 0425, Exhibit "O" ; Plaintiff's designation as special needs unknown until Missing Disc Discovery obtained).

73. CHIEF YANSEK, SGT STERN and SGT THOMAS allowed, permitted and acquiesced in a pattern, practice and custom of lax monitoring and supervision, inadequate recordkeeping, failure to provide medical attention and proper care to inmates, improper logbook entries which did not accurately reflect the activities of the Officers under their command and the requested needs of inmates, and permitted and allowed an atmosphere to exist that allowed the gross misconduct and violations the civil rights of plaintiff's decedent committed by OFFICERS RUSSO, DIMLER and LARGE.

74. CHIEF YANSEK, SGT STERN and SGT THOMAS permitted, allowed, acquiesced in an unofficial custom and policy that permitted Officers to fail to follow policy with impunity, and to conspire with each other to deny and cover misconduct.

75. CHIEF YANSEK, SGT STERN, SGT THOMAS, OFFICER DIMLER, OFFICER RUSSO and OFFICER LARGE knew or should have known of the history of suicide and psychiatric illness suffered by MULLIN as herein described, knew or should have known based on the Special Needs Roster and charting history that MULLIN was an addict and required one on one constant supervision as he was at high risk for suicide and/or self-inflicted harm.

76. CHIEF YANSEK, SGT STERN, SGT THOMAS, OFFICER DIMLER, OFFICER RUSSO and OFFICER LARGE knew that policy and procedure required direct and constant supervision and monitoring, and yet failed to abide by said policy and procedure, evidencing a gross indifference to the welfare of MULLIN.

77. CHIEF YANSEK, SGT STERN, SGT THOMAS, OFFICER DIMLER,

15