**OFFICER RUSSO and OFFICER LARGE permitted MULLIN to be in a cell with materials, such as bedsheets, which are known to be used by inmates at risk to harm themselves, including the committing of suicide, in violation of procedure, policy and protocol.**

78.     Nurse Beatrice Teel was summoned to assist decedent after he was found unresponsive.

79.     Decedent was pronounced dead at 4:49 AM.

80.     During all relevant times between January 15, 2009 and the time and date of death on January 17, 2009, decedent plaintiff was under the custodial care of the **SUPERVISOR DEFENDANTS.**

81.     The original death certificate states the place of death as Trenton Psychiatric Hospital; the records from the DOC indicate plaintiff's location at death was in either South Woods State Prison or C.R.A.F., and the amended death certificate identifies the location of death as C.R.A.F. A detective informed plaintiff that her son, plaintiff's decedent, had died at Trenton Psychiatric Hospital.

82.     On January 16, 2009, defendants **JANE BYRD, L.P.N**. and **ERIN MARUSKY, R.N**. acting under color of law in their personal and individual capacities as employees, agents and servants of the **SUPERVISOR DEFENDANTS** and/or as individual medical providers contracted to work in the facilities managed by the **SUPERVISOR DEFENDANTS,** undertook to examine and evaluate plaintiff's decedent.

83.     Decedent's medical record obtained from the DOC reflects numerous entries from 2005 until his death evidencing his past suicide attempts, his diagnosis as a suicide risk, his

family history of suicide, his history of mental illness including anxiety, depression and mood disorder, and his use of psychotropic medication for his psychiatric conditions.

84.     On several occasions, the record reflects that decedent answered "yes" to the question "have you ever been hospitalized or treated for psychiatric illness", and "have you ever considered or attempted suicide".

85.     Specific entries in the medical record include: On August 19, 2005, the decedent Robert Mullin stated during the nursing intake that he had considered or attempted suicide, and that in April 2005 he had attempted suicide. The notes on that date also reflect that the decedent was taking "psych medications."

86.     On September 26, 2007, during a nursing intake, the decedent answered "yes" to the question "have you ever been hospitalized or treated for psychiatric illness," and "have you ever considered or attempted suicide." The notes on that date reflect again that decedent was taking "psych medications."

87.     On September 28, 2007, notes in the medical record reflect that decedent had a diagnosis of a mood disorder.

88.     On October 3, 2007, notes in the medical record reflect that that decedent had a diagnosis of a mood disorder, and he was taking the psychotropic medication Doxepin, and he was referred to "Mental Health."

89.     On November 16, 2007, and on at least seven other occasions in the following two-plus years until decedent's death, notes in the medical records reflect the diagnosis of "mood disorder," a family history of suicide, and a history of being a suicide risk.

90.     At least one of these entries details that the decedent was being treated for a psychiatric illness, namely depression and anxiety.

91.     On January 14, 2009, three days before decedent's death, the medical record reflects that the inmate was seen at South Woods State Prison, following a transfer from Kintock to Detention/ECU, and the diagnoses of "mood disorder," a family history of suicide, and a history of being a suicide risk.

92.     On January 16, 2009, an entry in the medical record identifies a "nursing intake" completed by defendant **JANE BYRD, L.P.N**.  During that intake the decedent answered "Yes" to the question "have you ever been hospitalized or treated for psychiatric illness," and to the question "have you ever considered or attempted suicide."  The medical record on that date also includes the diagnoses of "mood disorder," a family history of suicide, and a history of being a suicide risk .

93.     A subsequent entry on January 16, 2009, signed by defendant **ERIN MARUSKY, R.N.** at 6:26 states the location of care is "Central Reception & Assignment Facility – Main," and the narrative "[inmate] medically cleared for placement on S3 … Erin Marusky, R.N. January 16, 2009 6:25 PM."

94.     Defendant **KINTOCK** failed to advise or notify any representative from the **DOC, SWSP** or **C.R.A.F.** that **MULLIN** was a **Special Needs inmate**, and that **MULLIN** as an addict, a suicide risk, had a history of tremendous substance abuse, had been tested positive for opiates and cocaine immediately prior to transfer to their care, and that he required intensive medical care and supervision.

95.     At no time did  defendant **NURSE BYRD** evaluate **MULLIN** for intoxication as was required under policy and procedure.

96.     Said individual defendants failed to adequately evaluate, supervise or monitor plaintiff, which failures were the direct and proximate cause of the self-harm and suicide by **MULLIN.**

97.     **As a Mental Health Special Needs inmate, and under the circumstances of his transfer from KINTOCK to Southwood State Prison to Trenton Psychiatric Hospital and/or C.R.A.F., and under the circumstances of his detention requiring administrative detention and segregation, REDACTED. ( all prior exhibits, Missing Disc Discovery identification as Special needs, policies from July 2013 discovery).**

98.     **Defendants failed and refused to follow policy and MULLIN did not receive the proper mental health evaluation, treatment and monitoring mandated by policy, being a direct and proximate cause of his suicide and death.**

99.     On January 17, 2009 an entry in the medical record identified the event as "internal other: death of inmate." This entry shows that nurse Teel was with an unnamed officer in the hallway on the floor at 4:24 AM, and CPR was performed by unnamed officers or medical providers, at which time the decedent was unresponsive. The unnamed officer was **OFFICER DIMLER.**

100.    A further entry in the record on Jan. 17, 2009, signed by Nurse Teel, identifies the event as "Emergency Report: Medical Emergency for code 66/late entry" repeats the entry, and adds a diagnosis list, including the history of mood disorder, family history of suicide, and that decedent was a suicide risk.

101.    Despite a known history of decedent's suicide attempts, anxiety, depression and psychiatric instability, as well as a recent history of addiction and drug use, all of the defendants

on Jan. 16 and 17, 2009 failed to provide adequate protection and supervision to decedent in the hours leading up to decedent's suicide and failed to intervene to prevent the suicide.

102.    **The report on the medical chart from the Licensed Clinical Social Worker, stating that plaintiff's decedent had psychological problems and was requesting mental health treatment and medication, and that he was positive for cocaine and opiates, should have alerted defendant NURSE BYRD that MULLIN was a suicide risk requiring special protocol and precautions, none of which occurred.**

103.    **OFFICER DIMLER last observed decedent at 3:50am on January 17, 2009, and found him dead at 4:23am, a half hour later, as set forth in the autopsy report, or failed to observe him all throughout his shift, as stated by an inmate (Missing disc, Exhibit "I," SAC para. 25, autopsy report).**

104.    **REDACTED. (Missing Disc on identification as Special Needs; policies July 2013).**

105.    **CHIEF YANSEK, LT DUDICH, SGT STERN, SGT THOMAS, OFFICER DIMLER, OFFICER RUSSO and OFFICER LARGE had actual knowledge and notice that decedent was a suicide risk and needed special care, monitoring and supervision, and knew that there was a strong likelihood of self-inflicted harm in the event that they failed to provide emergent care.**

106.    **REDACTED.**

107.    **REDACTED.**

108.    **REDACTED.**

109.    **All the named defendants failed to follow policy and protocol when they failed to notify the mental health department and see to it that decedent would be placed on**

20

**Constant Watch during the late evening/early morning hours when a psychologist or psychiatrist was not available to evaluate decedent as required, and/or failed to properly supervise their subordinates with regards to same.**

110.   **The failures on the part of the defendants to follow set guidelines and procedures for the management of inmates needing mental health care, including MULLIN, were a direct and proximate cause of his damages and death.**

111.   Plaintiff's decedent had a known and documented history of suicide attempts and psychiatric disturbance dating from 2005, 2007, 2008 and 2009 up to and including his final evaluation prior to his death, which was known to, and should have been known to, the **SUPERVISOR DEFENDANTS**, defendants **JANE BYRD, ERIN MARUSKY, R.N, OFFICERS DIMLER, RUSSO, LARGE, CHIEF YANSEK,  LT DUDICH, SGTS STERN, THOMAS** and **KINTOCK**.

112.   The **SUPERVISOR DEFENDANTS**, individually **KAREN BALICKI, ROBERT PATTERSON** and **MARIE DUNLAP-PRICE,** knew or should have known based on daily intake records at their disposal and for their review that **MULLIN** was being transferred into the facilities under their management, control and supervision, and knew or should have known of his current status of addiction, history of suicide attempts, emotional problems stemming from being recently fired and his current drug use.

113.   The **SUPERVISOR DEFENDANTS**, individually **KAREN BALICKI, ROBERT PATTERSON** and **MARIE DUNLAP-PRICE** under policy and procedure were required to know the status of those persons brought under the custody of their facilities, and in particular were required to know the reasons for transfer and to review the transfer records.

114.   The **SUPERVISOR DEFENDANTS**, individually **KAREN BALICKI**, **ROBERT PATTERSON** and **MARIE DUNLAP-PRICE** failed to either obtain and/or review the transfer records from **KINTOCK**, and failed to see to it that **MULLIN** was properly treated as a suicide risk and that he was treated for drug addiction in the infirmary under close watch and supervision as opposed to being released to a cell with inadequate monitoring and supervision.

115.   The **SUPERVISOR DEFENDANTS**, individually **KAREN BALICKI**, **ROBERT PATTERSON** and **MARIE DUNLAP-PRICE** failed to enact, implement and enforce policies and procedures requiring the review of records received from any transferring facilities, including halfway houses regarding those inmates transferred back into detention, failed to enact, implement and enforce policies and procedures for the handling of those at risk for self-harm and/or suicide and failed to enact, implement and enforce policies and procedures for the treatment of addiction and drug intoxication, all of which foreseeably led to the suicide of **MULLIN** and which evidenced a grace indifference and reckless disregard for the rights of **MULLIN** and others similarly situated to be maintained in a safe environment and to be protected from inflicting self-harm.

116.   Plaintiffs **JOAN MULLIN, as Administratrix Ad Prosequendum of the Estate of ROBERT MULLIN, JR.,** and **JOAN MULLIN, individually,** institute this action for compensatory and punitive damages arising out of the unlawful actions and conduct of the **SUPERVISOR DEFENDANTS** identified as **KAREN BALICKI, ROBERT PATTERSON** and **MARIE DUNLAP-PRICE,**  defendants **JANE BYRD, L.P.N**, **ERIN MARUSKY, R.N**, **CHIEF YANSEK, LT. DUDICH, SGT. STERN, SGT. THOMAS,  OFFICER DIMLER, OFFICER RUSSO, OFFICER LARGE, KINTOCK, JOHN DOES 9-10** and **ABC ENTITIES 1-10** in violating the civil rights of plaintiff's decedent protected by and secured

under the provisions of the First, Fourth, Eighth and Fourteenth amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1985.

117.  At all relevant times herein, the **SUPERVISOR DEFENDANTS,** defendants **JANE BYRD, L.P.N.** in her personal and individual capacities, **ERIN MARUSKY, R.N,** in her personal and individual capacities, **CHIEF YANSEK,** in his personal and individual capacities, **LT. DUDICH** in his personal and individual capacities, **SGT. STERN** in his personal and individual capacities, **SGT. THOMAS** in his personal and individual capacities, **OFFICER DIMLER,** in his personal and individual capacities, **OFFICER RUSSO** in his personal and individual capacities, **OFFICER LARGE** in his personal and  individual capacities, **KINTOCK, JOHN DOES 9-10** in their personal, individual and official capacities, and **ABC ENTITIES 1-10** were acting under color of state law and within the scope of their authority as agents, servants and employees of said defendants.

118.  Plaintiffs also institute this action pursuant to the laws of the State of New Jersey for damages arising by reason of wrongful death, pain and suffering, hedonistic damages, negligence, infliction of mental distress, the failure to properly hire, train and supervise staff, employees, agents and servants, abuse of authority, failure to provide adequate medical care and treatment, malpractice, negligence and civil conspiracy.

119.  Plaintiffs were permitted to file a late Notice of Claim by Order of the Hon. Sue Regan dated February 10, 2010, which were served accordingly pursuant to New Jersey Statutes Title 59:8-4 and signed by plaintiff's representative, Shelley L. Stangler, Esq. upon the public entities employing the **SUPERVISOR DEFENDANTS, KINTOCK, JOHN DOES 4-10** and **ABC ENTITIES 1-10.**

120. More than six (6) months have elapsed since service of plaintiff's Notices of Claims and the claims remain unresolved.

121. This action was commenced within two (2) years from the date of the death, January 17, 2009.

### FIRST COUNT
### (42 U.S.C. 1983 & 1985)

122. Plaintiffs repeat each and every allegation contained in the aforementional paragraphs and incorporates same by reference.

123. At all relevant times herein, the **SUPERVISOR DEFENDANTS**, acting in their personal and individual capacities, defendants **JANE BYRD, L.P.N.,** acting in her personal and individual capacities, **ERIN MARUSKY, R.N,** acting in her personal and individual capacities, **CHIEF YANSEK**, in his personal and individual capacities, **LT. DUDICH** in his personal and individual capacities, **SGT. STERN** in his personal and individual capacities, **SGT. THOMAS** in his personal and individual capacities, **OFFICER DIMLER,** in his personal and individual capacities, **OFFICER RUSSO** in his personal and individual capacities, **OFFICER LARGE** in his personal and  individual capacities, **KINTOCK, JOHN DOES 8-10** in their personal and individual, and **ABC ENTITIES 1-10,** through their agents, servants and employees and acting in their personal and individual capacities, and **ABC ENTITIES 1-10,** were acting under color of law under the state and federal Constitutions, statutes, laws, charters, ordinances, rules, regulations, customs, usages and practices of the subject governmental departments, agencies and entities and within the scope of their authority as employees and/or officers of the State of New Jersey, the DOC, South Woods State Prison and/or C.R.A.F.

124. During all relevant times herein the aforementioned defendants acted jointly and in concert with each other, and conspired and agreed between and amongst themselves to

24

commit the unlawful violation of civil rights upon plaintiff's decedent **ROBERT MULLIN** (hereinafter **"MULLIN"**) as well as to fail to provide proper medical care to **MULLIN**.

125.    In particular, defendants agreed and conspired not to provide sufficient and adequate mental health and medical care to **MULLIN**, not to provide sufficient and adequate supervision, to violate protocols and policies designed to stop and avoid suicide by those persons, such as plaintiff's decedent, under the control and custody of the defendants, to fail to monitor and supervise **MULLIN**, to fail to intervene or protect **MULLIN** from danger and imminent physical harm, to fail to treat for addiction and intoxication and to allow **MULLIN** to have the ability to commit suicide.

126.    During all relevant times herein the **SUPERVISOR DEFENDANTS**, acting in their personal and individual capacities, defendants **JANE BYRD, L.P.N.,** acting in her personal and individual capacities, **ERIN MARUSKY, R.N,** acting in her personal and individual capacities, **CHIEF YANSEK**, in his personal and individual capacities, **LT. DUDICH** in his personal and individual capacities, **SGT. STERN** in his personal and individual capacities, **SGT. THOMAS** in his personal and individual capacities, **OFFICER DIMLER,** in his personal and individual  capacities, **OFFICER RUSSO** in his personal and individual capacities, **OFFICER LARGE** in his personal and  individual capacities, **KINTOCK, JOHN DOES 8-10** in their personal, individual and official capacities, and **ABC ENTITIES 1-10,** through their agents, servants and employees and acting in their personal and individual capacities, acted with deliberate and conscious indifference to **MULLIN'S** constitutional rights which violations arose out of a pattern or custom or policy and practice by each of the defendants, in permitting and allowing **MULLIN** to be unsupervised, alone, and with the wherewithal to do harm to himself, in failing to provide medical and mental health attention, in

failing to review transfer records and failing to see to it that **MULLIN** was properly evaluated, in **failing to check and follow protocol for Mental Health Special Needs inmate** such as **MULLIN**; in failing to obtain the requisite mental health evaluation prior to transfer to housing unit; **in failing to maintain MULLIN on REDACTED and under constant observation**; in failing to have **MULLIN** maintained in the infirmary and treated for drug intoxication and addiction,   in failing to enact, implement, promulgate and enforce policies, procedures and standards with respect to suicide watch and avoidance, in failing and omitting to follow mandated policies which would have prevented the suicide and death;   **in conspiring with each other to cover up and ignore the requests of MULLIN for assistance and care while on the Housing Unit**; inadequate recordkeeping, failing to intervene, in exposing plaintiff's decedent to imminent bodily harm, which was foreseeable under the circumstances, in allowing unsafe conditions to exist in the defendant correctional facilities, infirmaries and hospital, train and supervise their employees in the proper conduct of their duties, among other acts and omissions.

127.     At all relevant times herein the defendants, individually and collectively, through their agents, servants and employees were acting within the scope of their employment and duties at the time of the subject events as well as in their personal and individual  capacities.

128.     At all relevant times herein the defendants, individually and collectively, through their agents, servants and employees, and acting in their personal and individual capacities, by reason of their acts, omissions, deliberate and conscious indifference to the rights of **MULLIN**, and by a pattern of abuse and violation of procedure and protocol, and failure to provide medical treatment inclusive of mental health services, and by their failure to provide **MULLIN** with a safe environment and by putting him in a position to harm himself, and in conspiring to ignore and deny **MULLIN** medical care, deprived **MULLIN** of his rights, privileges and immunities

secured by the Constitution and laws of the United States, and are liable to the plaintiffs pursuant to Title 42 Sections 1983 and 1985 of the United States Code and the New Jersey Civil Rights Statute Title 10 and under state common law.   Further, as a protected class of disability, **MULLIN** is entitled to the protections afforded under 42 U.S.C. Section 1985.

129.   The defendants, their agents, servants and employees allowed, condoned and permitted the circumstances under which suicide and harm could occur, and with deliberate indifference failed to prevent it, failed to intervene, failed to provide proper medical care and services, and subjected **MULLIN** to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

130.   The defendants, their agents, servants and employees deprived **MULLIN** of his rights, privileges and immunities secured by the Constitution and laws of the United States including violation of his Fourteenth Amendment rights of due process, equal protection, his First and Fourth Amendment rights and his rights of privacy.

131.   At all relevant times herein the aforedescribed acts were committed under color of law within the authority of the agents, servants and employees of the defendants.

132.   The defendants, individually and collectively acted pursuant to official policy and/or custom and to deprive plaintiff's decedent of his constitutional rights under 42 U.S. Code section 1983 and 1985.

133.   By reason of the foregoing, defendants violated the civil rights of plaintiff's decedent.

134.   By reason of the foregoing, and as a direct and proximate result of defendants' constitutional violations, plaintiff's decedent **MULLIN** sustained serious and severe injuries which resulted in his death.

135.    The decedent left him surviving his mother, **JOAN MULLIN**, and other next of kin.

136.    As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff's decedent **MULLIN** was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

137.    As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff **JOAN MULLIN** has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

138.    By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has been damaged.

139.    By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff **JOAN MULLIN** has suffered pecuniary losses and has been compelled to expend and incur various sums of money for funeral and burial expenses.

140.    By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

141.    **WHEREFORE**, plaintiffs **JOAN MULLIN, as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR.**, and **JOAN MULLIN individually,** demands judgment against defendants, **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, L.P.N., ERIN MARUSKY, R.N., OFFICER NICHOLAS DIMLER, in his personal and individual capacity, OFFICER ROBERT RUSSO, in his personal and individual capacity, CHIEF RALPH YANSEK, in his personal and individual capacity, LT.**

**DUDICH,** in his personal and individual capacity, **SGT. B. STERN,** in his personal and individual capacity, **SGT. THOMAS SPENCE,** in his personal and individual capacity, **OFFICER ERIC LARGE,** in his personal and individual capacity, **KINTOCK GROUP, JOHN DOES 8-10** (as yet unidentified and unknown governmental, county, or state officials, supervisors, agents or employees) in their individual and professional capacities, and **ABC ENTITIES 1-10** (as yet unidentified and unknown governmental entities, agencies, units or subdivisions, jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

## SECOND COUNT
### (New Jersey Civil Rights Act)

142.    Plaintiffs repeat and reallege each and every allegation contained in the aforedescribed paragraphs and incorporates same by reference.

143.    Defendants, individually and collectively, through their agents, servants and employees acted pursuant to official policy and/or custom to deprive plaintiff's decedent of his constitutional rights under Title 10 of the New Jersey statutes, known as the New Jersey Civil Rights Act., N.J.S.A. 10:6-1 *et seq*.  Specifically, by their actions, defendants deprived plaintiff's decedent of his right to be free from cruel or unusual punishment as provided by the New Jersey Constitution, Article 12, his right to due process as provided by the New Jersey Constitution, Article 1.

144.    By reason of the foregoing, and as a direct and proximate result of defendants' constitutional violations, plaintiff's decedent **MULLIN** sustained serious and severe injuries which resulted in his death.

145.    The decedent left his surviving mother, **JOAN MULLIN**, and other next of kin.

146.    As a direct and proximate result of the constitutional violations as aforedescribed,

plaintiff's decedent **MULLIN** was caused to suffer severe, painful and permanent personal injuries, emotional anguish and great physical pain.

147.   As a direct and proximate result of the constitutional violations as aforedescribed, plaintiff **JOAN MULLIN** has been damaged and has been permanently deprived of the services, society, care, companionship, support and guidance of plaintiff's decedent for the life expectancy of decedent.

148.   By reason of the foregoing and wrongful death of plaintiff's decedent, plaintiff **JOAN MULLIN** has been damaged.

149.   By reason of the foregoing and wrongful death of plaintiff's decedent plaintiff **JOAN MULLIN** has suffered pecuniary losses and has been compelled to exprend and incur various sums of money for funeral and burial expenses.

150.   By reason of the foregoing and wrongful death plaintiff's decedent has suffered loss of enjoyment of life.

151.   **WHEREFORE**, plaintiffs **JOAN MULLIN, as Administratrix Ad Prosequendum of the ESTATE of ROBERT MULLIN, JR.**, and **JOAN MULLIN individually,** demands judgment against defendants, **ADMINISTRATOR KAREN BALICKI, DIRECTOR ROBERT PATTERSON, DIRECTOR MARIE DUNLAP-PRYCE, JANE BYRD, L.P.N., ERIN MARUSKY, R.N., OFFICER NICHOLAS DIMLER, in his personal and individual capacity, OFFICER ROBERT RUSSO, in his personal and individual capacity, CHIEF RALPH YANSEK, in his personal and individual capacity, LT. DUDICH, in his personal and individual capacity, SGT. B. STERN, in his personal and individual capacity, SGT. THOMAS SPENCE, in his personal and individual capacity, OFFICER ERIC LARGE, in his personal and individual capacity, KINTOCK GROUP,**

**JOHN DOES 8-10** (as yet unidentified and unknown governmental, county, or state officials, supervisors, agents or employees) in their individual and professional capacities, and **ABC ENTITIES 1-10** (as yet unidentified and unknown governmental entities, agencies, units or subdivisions, jointly and severally for compensatory and punitive damages, funeral bills, together with interest, costs of suit and attorneys' fees.

<u>**THIRD COUNT**</u>
**(Negligence)**

152.     Plaintiffs repeat and reallege each and every allegation contained in the aforedescribed paragraphs and incorporates same by reference.

153.     At all relevant times herein defendants were under a duty to act reasonably in the performance of their duties as corrections officers, staff, medical providers and supervisors in the control, maintenance, operation, handling and management of the jail and correctional facilities and/or in the hospital, in the provision of medical care and treatment,  in properly supervising and monitoring plaintiff's decedent, in following and promulgating appropriate policies and procedures with respect to those who are likely to harm themselves, including the commission of suicide, and to prevent such harm from occurring, and to intervene to avoid and prevent such harm from occurring, and in providing proper training to those with the responsibility for the care and management of those under custodial or hospital care.

154.     At all relevant times herein defendants were under a duty to act reasonably in following and maintaining proper protocol, policy, procedures, rules and guidelines enacted and propounded with respect to their duties and the care and management of plaintiff's decedent and others similarly situated.

155.     Defendants, individually and collectively were negligent and careless in their failure to properly hire, retain, train and supervise officers, staff, employees, agents, servants and